CLEMENTINE FARR DUFF and AMERICAN SECURITY AND TRUST COMPANY, as Executors of and Trustees under the Last Will and Testament of JOHN J. DUFF, Deceased, Plaintiffs, *v.* MARY J. C. RODENKIRCHEN, JOHN J. McNALLY et al., Defendants.

(Supreme Court, New York Special Term, February, 1920.)

Wills — construction of — trusts — residuary estates — devise — accounting — life tenants — power of appointment — suspension of power of alienation — Real Property Law, §§ 175, 178.

Under the will of a father, his surviving son and daughter each received a beneficial interest for life in one-half of the residuary estate and in addition each received a remainder for life in the other half, contingent upon survivorship after the death of the original life tenant without issue, and the remainder after the death of both life tenants was devised to their issue or in default of issue, to such person as the survivor of the life tenants might by last will appoint. The testator's daughter who died without issue devised and bequeathed her residuary estate to her brother, who died after his sister, without issue, leaving a last will by which he devised and bequeathed the residue of his estate to plaintiffs in trust for his wife with direction to transfer and convey the same, at her death, to such persons as she might appoint, and in default of such appointment, or in the event his wife should predecease him, to certain persons named in his will. In an action for the

settlement of the son's account as surviving trustee under the will of his father, and for the determination of the rights of the parties to certain real estate and the proceeds of real estate under the terms of the several wills, *held,* that under section 175 of the Real Property Law the power of appointment in the son's will, if otherwise valid, must be deemed an execution of the power of appointment conferred upon him by the will of his father, though it was neither recited nor referred to in the son's will.

Where, as here, the son in addition to the power conferred on him by his father's will had an independent interest in the property, the statutory rule (Real Property Law, § 178) that his will must be regarded as an execution, so far as valid, of the power conferred on him by his father's will, did not apply, and the court must give effect to the whole will of the son as a devise of his independent interest, and even if he could not devise it for life, the court will then regard the entire attempted devise as invalid.

The father's will making no provision for the contingency of both his children dying without issue and without executing the power to dispose of the remainder after the death of the life tenant, there was a reversion in his estate which passed as if he had died intestate, and his son being at the time of his death an heir at law of his father and the residuary devisee of his sister, was the owner of the entire reversion of his father's estate and had a right to devise the same, entirely apart from the power of appointment under his father's will.

The will of the son created a new future estate in his property which was valid because, standing alone, it did not suspend the power of alienation for more than one life, and the mere fact that such new estate followed immediately upon a previous trust for two lives does not alter the rule, for the new estate did not continue the earlier trust but constitutes a new and independent suspension of the power of alienation, not in contravention of the statute.

Action for an accounting.

M. F. Johnson (Howard C. Taylor, of counsel), for plaintiffs.

Morris A. Hulett, for defendant Rodenkirchen.

Agar, Ely & Fulton (John G. Agar, of counsel), for defendants Clementine Farr Duff and others.

Joseph Atz, for defendants Fox and others.

Winthrop & Stimson, for defendants Children's Seashore House and another.

John T. Sturdevant, for defendant Episcopal Eye, Ear and Throat Hospital.

Arthur T. Clark, guardian *ad litem* for infant defendants Fox.

LEHMAN, J.  The plaintiffs herein have brought an action for the settlement of the accounts of their testator as surviving trustee under the last will and testament of his father, Michael Duff, and in their complaint they ask for a construction of the will of John J. Duff and for a determination of the rights of the parties herein, to certain real estate and the proceeds of real estate, under the terms of the wills of John J. Duff, his sister, Mary Carey, and Michael Duff.  Michael Duff died a resident of New York county on October 28, 1904.  At the time of his death he was seized of certain real property which passed under the devise of his residuary estate in his will. This will provides: " *Eighth.* I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of what nature or kind soever unto my executors hereinafter named, in trust, to divide the same into two equal parts or shares and to apply the net annual income of one of said parts or shares to the use of my son, John J. Duff, during his natural life, and upon his death I give, devise and bequeath the said part or share of said estate unto the issue then living of the said John, to be equally divided

37

between them *per stirpes* and not *per capita,* and in case my said son should die without leaving any issue him surviving, then I direct my said executors to apply the net annual income of the said part or share to the use of * * * daughter, Mary Carey, during her natural life, and upon her death, I give, devise and bequeath the said part or share to the issue of the said Mary, to be equally divided between them *per stirpes* and not *per capita,* and in case the said Mary should die without issue living at the time of her death, I give, devise and bequeath the said part or share unto whomsoever the said Mary Carey shall be a writing in the nature of a last will and testament appoint to receive the same. *Ninth.* I direct my executor aforesaid to apply the net annual income or the remaining part or share of my estate so held in trust by them to the use of my said daughter, Mary Carey, during her natural life, and upon her death I give, devise and bequeath the said remaining part or share of said estate unto the issue of my said daughter, Mary, then living, to be divided between them *per stirpes* and not *per capita,* and in case my said daughter should die without leaving any issue her surviving, then I direct my said executors to apply the net annual income of the said remaining part or share to the use of my son, John J. Duff, during his natural life, and upon his death I give, devise and bequeath the said part or share to the issue of the said John, to be divided between them *per stirpes* and not *per capita,* and in case the said John should die without leaving any issue living at the time of his death, then I give, devise and bequeath the said remaining part or share unto whomsoever the said John J. Duff shall by a writing in the nature of a last will and testament appoint to receive the same. *Tenth.* In case either the said Mary Carey or the said John J. Duff should at any time become

entitled by the death of one of them to the income of
both parts or shares of my said residuary estate, and
the survivor of the said Mary and John should die
without issue living at the time of his or her death,
then I give, devise and bequeath the whole of the said
two parts or shares, being the whole of the rest,
residue and remainder of my said estate unto such
person or persons as the said survivor shall by a writ-
ing in the nature of a last will and testament duly
appoint*ed* to receive the same." Both John J. Duff
and Mary Carey survived Michael Duff, and each
received a beneficial estate for life in half the resid-
uary estate, and each received in addition a re-
mainder for life in the other half, contingent upon
survivorship after the death of the original life tenant
without issue. The remainder after the death of the
life tenants was devised to the issue of the life tenants,
or, in default of issue, to such person as the survivor
of the two life tenants might by last will or testament
appoint. The will contains no devise to other parties
if the life tenants died without issue and the survivor
failed to exercise the power of appointment. The
daughter, Mary Carey, died without issue on the 3d
day of May, 1913, and by her will devised and be-
queathed her residuary estate to her brother, John
J. Duff. Since she did not survive John J. Duff she
had no power of appointment under her father's will,
and she did not in her own will attempt to exercise
such a power. John J. Duff died without issue in the
city of Washington, D. C., on January 22, 1918, and
left a last will and testament in which he devised and
bequeathed the residue of his estate to the plaintiffs
in trust for his wife, Clementine Farr Duff, for and
during the term of her natural life, and after her death
to transfer and convey the same to such persons as his
wife may appoint, and in default of such appointment,

or if his wife should predecease him, to certain parties named in the will. Although the testator does not recite or refer to the power conferred upon him under the will of Michael Duff, this provision must be deemed to be an execution of that power, if it is otherwise valid. Real Prop. Law, § 175. It is almost conceded by all parties that the provision of the will of John J. Duff is not a valid execution of the power conferred upon him by the will of Michael Duff in respect to the share of the estate originally devised to Mary Carey for life. In that portion of the estate Mary Carey was the first life tenant, then John J. Duff was life tenant, and since " the period during which the absolute right of alienation may be suspended by an instrument in execution of a power must be computed not from the date of such instrument, but from the time of the creation of the power" (Real Prop. Law, § 178), it is quite clear that John J. Duff cannot by virtue of the power conferred upon him under his father's will suspend the absolute power of alienation for a third life. In my opinion it is equally clear that this provision of John J. Duff's will is not a valid execution of the power conferred upon him under his father's will in respect to the share originally devised to him for life. Under Michael Duff's will the power of absolute alienation of his whole estate was suspended during the lives of both son and daughter. Michael Duff could not by his own will have provided that John J. Duff's share should go to him for life and then to Mary Carey, or if Mary Carey should predecease John J. Duff, then to a third person for life, and Michael Duff could not by will give to his son a power which he did not himself possess. It is urged, however, that even if the will of John J. Duff is not a valid execution of his power to dispose of the remainder of his father's residuary estate, in so far as it creates a trust for his

wife for life, the court should still give effect to the
other parts of his will in so far as the will appoints
others to receive the fee after the death of his wife.
Possibly if John J. Duff had no interest in the prop-
erty formerly owned by his father and could dispose
of it only through the power conferred upon him by
the will of his father, and the court could determine
that it was John J. Duff's intention that if the life
estate he attempted to create, and the power he .
attempted to give his wife to dispose of the remainder
were not valid, the gift over to other parties should
take effect, the court would find some means to give
effect to this intention, but in this case John J. Duff
did, in my opinion, have a personal interest in the
property, and the court would violate his clear inten-
tion if it enforced any provision of the will which
would deprive John J. Duff's wife of any portion of
the property which he attempted to devise to her for
life, or which she would receive if he died intestate.
The entire scheme of John J. Duff's will shows that
it was his intention to provide primarily for his wife.
He gave her not only a beneficial interest in his estate
for her life, but also a power to dispose of the estate
by will.  The rule of the statute that the will of John
J. Duff must be regarded as an execution, so far as
valid, of the power conferred on him by his father's
will has no application where, in addition to the power,
the testator has an independent interest in the prop-
erty. *Mutual Life Ins. Co.* v. *Shipman,* 119 N. Y. 324.
The reasoning of that case applies with particular
strength to the present situation.  If John J. Duff had
an independent interest in the property which he could
devise to his wife for life, then the court must give
effect to the whole will as a devise of the interest, and
not as the attempted execution of a power, and if he
had such interest, even if he could not devise it for

Supreme Court, February, 1920.     [Vol. 110.

life, the court should then regard the entire attempted devise as invalid, for it is clear that the testator would never have made any devise which would deprive the wife of any rights in his estate. Since Michael Duff by the residuary clause of his will failed to provide for the contingency of both his children dying without issue, and without executing the power to dispose of the remainder after the death of the life tenant, there was a reversion in his estate which he failed to dispose of by will, and which passed as if he had died intestate. At the time of his death John J. Duff and Mary Carey were his heirs at law, and any estate which he possessed at that time, and which was not disposed of by will, passed to them, or perhaps it would be more accurate to say remained in them. The contention that this reversion was a contingent future estate, which vested in the heirs of Michael Duff only when the contingency that both life tenants would die without issue, and without having executed the power conferred in the will, and that his heirs must be determined as of the time of vesting, is supported neither by reason nor authority. A reversion under the statute is an estate in expectancy, but not a future estate. Real Prop. Law, § 36. It is the residue of the estate left in the heirs of a testator, commencing in possession on the determination of one or more particular estates devised. Real Prop. Law, § 39. The term reversion necessarily assumes that the grantor has not parted with his entire estate, and neither under the terms of the statute (Real Prop. Law, § 40), nor at common law, are the rules in regard to vested or contingent estates applicable. Since a reversion is the residue of an estate which is *left* in the grantor or his heirs or in the heirs of a testator, it follows that there can be no question of when this estate *vested.* At the death of Michael Duff the reversion in the

property not devised was a residue *left* in his heirs John J. Duff and Mary Carey. The survivor of these heirs without issue had power to complete the alienation of Michael Duff's property, and thereby terminate the reversioner's expectant estate, but in the absence of the execution of such a power the reversion ripened from an estate in expectancy to the full fee, including the right of possession. All expectant estates are descendible, devisable and alienable in the same manner as an estate in possession, and since John J. Duff was the heir at law and the residuary devisee of Mary Carey, at the time of his death he was the owner of the entire reversion of Michael Duff's estate, and entirely apart from the powers given him by Michael Duff's will he had the right to devise this reversion. It follows that the will should be regarded rather as the disposition of his own estate than the attempted execution of a power given him under his father's will. Since John J. Duff's will should not be construed as the execution of a power conferred by the will of Michael Duff, any suspension of the power of alienation created by the will of John J. Duff does not date back to the creation of the power. Michael Duff's will did not contravene the statute, and since the will of John J. Duff devises an estate which he always possessed, his will creates a new future estate in his own property, and that future estate is valid because, standing alone, it does not suspend the power of alienation for more than one life. In other words, since John J. Duff had an estate which he could freely alienate, he has not suspended the power of alienation for more than one life by devising his own freely alienable estate in trust for one life or even two lives. The mere fact that this new estate follows immediately upon a previous trust estate for two lives does not alter the rule, for the new estate does not continue

the earlier trust. It constitutes a new and independent suspension of the power of alienation, which is not in contravention of the statute. See *Livingston* v. *New York Life Ins. & Trust Co.*, 36 N. Y. St. Repr. 566; 13 N. Y. Supp. 105; affd., on second appeal *sub nomine McCurdy* v. *New York Life Ins. & Trust Co.*, on opinion on previous appeal, 83 Hun, 612; affd., without opinion, 151 N. Y. 667.

Judgment accordingly.