In the Matter of the Estate of AL HAYMAN, Deceased.

Surrogate's Court, New York County, August 29, 1929.

*Rose & Paskus* [*Louis J. Vorhaus* of counsel], for the estate of Minnie Hayman.

*Cohen, Cole, Weiss & Wharton* [*Robert E. Samuels* and *Robert H. Wrubel* of counsel], for Alice H. Kerbs and others.

*Herbert H. Maass* [*Monroe L. Friedman* of counsel], for Irma Rosenberger and others.

*A. Loeb Salkin* [*A. Loeb Salkin* and *Henry S. Spiegelman* of counsel], for Lucille L. Milner and others.

*Bandler, Haas & Collins* [*John F. Collins, Harry L. Haas* and *Harry Merwin* of counsel], for Blanche Boas and another.

*Arthur T. O'Leary*, for Irene Coleman.

*John T. Magan*, for St. Joseph's Home for the Aged.

*Stroock & Stroock* [*Robert D. Steefel* of counsel], for Montefiore Hospital for Chronic Diseases.

*Jacob I. Goodstein*, for Actors Fund of America.

*White & Case*, for Bankers Trust Company.

*William F. Clare*, for Catholic Institute for the Blind.

*Joseph A. Arnold*, for Sanford J. Bernheimer.

*Kohlman & Austrian*, for Arthur J. Freund, trustee.

*Hoadly, Lauterbach & Johnson*, for Mount Sinai Hospital.

*Siegfried F. Hartman*, for Frederick Skrainka.

FOLEY, S. In this accounting proceeding, intricate questions of construction of the will have been presented for determination. These issues have been briefed with commendable thoroughness by the numerous counsel for the parties. The testator created a trust of the residue for the benefit of his wife for life. Upon her death he directed the sum of $250,000 be set aside from the fund to be retained by the executors in further trust with the income thereof payable to his brother, Alf Hayman. On the latter's death the principal of said fund was directed to be paid to such persons and in such proportions as Alf Hayman should appoint in his last will and testament. The will of the testator was admitted to probate in 1917. The brother, Alf Hayman, died on May 15, 1921, and his secondary life estate never came into actual existence. The widow, Minnie Hayman, died on April 16, 1928, and thereby the trust under the donor's will terminated. Under the provisions of the donee's will executed in 1918 Alf Hayman exercised the power of appointment by placing the fund in trust with the income thereof to be paid to Irene Coleman for her life with remainder in specified proportions to five charitable beneficiaries. In June, 1920, he executed a codicil which revoked and canceled the provisions of the will just stated and substituted for them a trust, of which Irene Coleman was the life tenant, with directions to pay the principal of the fund of $250,000 created by his brother's will to such persons as Irene Coleman should duly appoint by her last will.

The primary question for determination involves the validity of this attempt of Alf Hayman to appoint the fund for an additional term of the life of Irene Coleman. I hold that the attempted

appointment failed because it violated our statutes against perpetuities. (Real Prop. Law, § 42; Pers. Prop. Law, § 11.)

Its invalidity results because the will of the donor of the power created a trust for two lives, those of his widow and his brother. The donee's will added a third life in contravention of the statute. We are required, in testing the validity of the appointment, to read into the provisions of the donor's will the directions contained in the donee's will (*Hillen* v. *Iselin*, 144 N. Y. 365, and the comprehensive article by former Justice MARSH on Perpetuities Arising through Powers of Appointment, 25 Col. Law Rev., No. 5, p. 521.) The appointment is to be read as if it had been incorporated in the original will. (*Fargo* v. *Squiers*, 154 N. Y. 250.) Section 178 of the Real Property Law provides: " The period during which the absolute right of alienation may be suspended, by an instrument in execution of a power, must be computed, not from the date of such instrument, but from the time of the creation of the power." Tested by these rules it is clear that the brother, Alf could not, by virtue of the power conferred upon him under the will of the testator here, further suspend the absolute power of alienation for a third life. The authorities require that the legality of the period of suspension must be judged as of the date of the creation of the original estate by what may happen, and not what actually occurred in the subsequent years. Future estates to be valid must be so limited that in every possible contingency they will absolutely terminate at the period prescribed by the statute. (*Matter of Wilcox*, 194 N. Y. 288; *Schettler* v. *Smith*, 41 id. 328; Chaplin, Suspension of the Power of Alienation [3d ed.], p. 117.) The addition of a third life estate by the will of Alf Hayman to the trust period legally exhausted by the testator's will was, therefore, void. (*Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266; *Dana* v. *Murray*, 122 id. 604; *Beardsley* v. *Hotchkiss*, 96 id. 201; *Ripley* v. *Guaranty Trust Co.*, 165 App. Div. 481; *Duff* v. *Rodenkirchen*, 110 Misc. 575; affd. on the opinion of Mr. Justice LEHMAN, 193 App. Div. 898.)

In *Duff* v. *Rodenkirchen* (110 Misc. 575, at p. 580) a similar finding of illegality was decreed. The scheme of the will of the donor of the power was quite like the one involved here. Half of the property was bequeathed in trust to each of two children, a son and a daughter. There were alternative life estates over after the death of the first life tenants. The one-half share of the son had passed through but one actual life. The daughter predeceased him and her secondary life estate never came into existence. The son attempted in his will to appoint this share for an additional life under his power. Mr. Justice LEHMAN held

that, reading the instruments together as of the date of the creation of the power, three lives were contemplated and the attempt to suspend for a third life was unlawful.

As the will of Alf created a class of contingent remaindermen ascertainable only at the date of death of the third life tenant, the remainder is likewise void and it is not possible to eliminate the illegal trust period or accelerate the remainder. Counsel for Irene Coleman in his brief argues, even if the conclusion of the invalidity of the trust term be reached, that under the will of the testator the power conferred upon his brother Alf became an absolute fee and that the entire fund should be paid over, under the provisions of his will, on this theory as his individual property. He further contends that for similar reasons the appointment to Irene Coleman by Alf's will became absolute. These contentions must be overruled. They are without support in the statutes dealing with powers or in the cases construing them. Alf Hayman was not the owner of the fund. (*Dana* v. *Murray*, 122 N. Y. 604.) A similar situation was created as to Irene Coleman. It is only where the tenant for life or for years is enabled in his lifetime to dispose of the entire fee for his own benefit that the power of disposition is absolute (Real Prop. Law, § 153); or where, under the immediate preceding sections of that law, there is a legal estate for life or for years in the nature of a general or beneficial power with a right to convey or devise. (*Matter of Davies*, 242 N. Y. 196.) If the estate be an equitable one, as in this case, the interest of the life tenant, even with the power of disposition by a will, does not ripen into an absolute fee. (*Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266; *Genet* v. *Hunt*, 113 id. 158; *Cutting* v. *Cutting*, 86 id. 522; *Woodbridge* v. *Bockes*, 59 App. Div. 503; affd., 170 N. Y. 596.)

The further contention of counsel here, because the life tenant, Irene Coleman, was a cotrustee that there was a merger of the legal and equitable interests, must be overruled. He relies upon *Greene* v. *Greene* (125 N. Y. 506) and *Major* v. *Major* (177 App. Div. 102) as authorities for this argument. In this will, however, the designation of two trustees, one of which was a corporate fiduciary, clearly shows an intent on the part of Alf Hayman to prevent such a merger. It is also argued that under the provisions of sections 163 and 177 of the Real Property Law the court may adjudge a proper execution of the power in favor of Irene Coleman. Section 163 applies only to attempts to exercise the power which are defective, and does not apply to an attempted exercise, as in this case, which is wholly void. (Fowler, Real Prop. Law [3d ed.], p. 657.) Section 177 for similar reason is inapplicable principally

because of the invalidity which affects the entire scheme of the appointment.

The claim of the charitable institutions, which were the original remaindermen in the will of Alf Hayman, must be overruled. Their rights were abrogated by the execution of the codicil which *revoked and canceled* the provisions made for them and substituted a different group of remaindermen in their place. The revocation of these provisions was express and complete and the invalidity in the codicil arising out of its construction and not its execution cannot serve to revive any rights granted in the prior canceled instrument. (*Ely* v. *Megie*, 219 N. Y. 112, at p. 139.)

The further question is presented as to the distribution of the fund by reason of the failure to validly exercise the power of appointment. There is no specific provision in the will of the testator, Al Hayman, the donor of the power, for a gift over in case of this neglect. Certain of the parties claim that the fund of $250,000 passed by intestacy to the next of kin of Al Hayman. On the other hand, it is asserted by certain of his nephews and nieces that they are entitled to sole participation on the theory that they are the residuary legatees. Under the language of the will I am compelled to hold that the fund passed as intestate property. The residuary clause of the donor's will, after creating the trust for the benefit of his widow for life, directed at her death the severance and further retention in trust of the fund of $250,000 in dispute here. It then provided for the payment out of the remaining residue of $25,000 to each of three charitable beneficiaries. The relevant clause then follows, " *and the balance of said principal fund* so held in trust shall be divided equally, share and share alike, between my nephews and nieces me surviving, being the children of my sisters Rose Hochstadter, Blanche Meyer and Ella Bernheimer, the issue collectively of any deceased niece or nephew to take the share which the parent would have taken if living." It is claimed that the dominant purpose of the testator was to confine distribution of any lapsed or invalid disposition to this specified class of relatives. It is asserted that he intended thereby to exclude his widow, the children of another deceased sister and the estate of his brother Alf from any participation. While there are indications of that purpose as to other gifts, the will fails to expressly provide for the disinheritance of certain of the next of kin as to the fund in dispute here. Such indications of intention exist as to a certain part of his property, but they are balanced by the much clearer mandate that the fund was to be distributed to such persons, without restriction of relationship to the testator, as Alf Hayman might validly select by his will.

It is impossible in this case, under any provision of the will, to adjudge a gift to the so-called preferred group. The struggle against intestacy is futile because of the omission in the will to make an effective disposition. The testator and the draftsman utterly failed to anticipate the failure by Alf Hayman to validly exercise the power of appointment of the specific fund and there was no gift over in default of its proper exercise. The division of the residue is in specific amounts, and after the separation of the fund of $250,000 here involved, and the legacies to the charities aggregating $75,000, " the balance " of said principal fund so held " in trust " was to be paid to the specified legatees. The gift to the latter was not a general residuary gift, but a limited grant of a fixed, ascertainable balance. It did not expressly or impliedly include prior lapsed legacies carved out of the general residue or similar provisions which failed by omission to provide gifts over. The language of the will, therefore, comes within the rule dealing with the " residue of a residue." (*Wright* v. *Wright*, 225 N. Y. 329, at p. 340; *Matter of Hoffman*, 201 id. 247; *Matter of Gallien*, 247 id. 195, at p. 203.) The circumstances in *Wright* v. *Wright* (*supra*) are almost identical. There a gift of $100,000 directed to be paid out of part of the residue to a library failed. It was held that the lapsed gift did not go to the legatee of the balance of the share of the residue, but passed by intestacy. The opinion states: " In such a case, on failure of the intended legacy of part of the residuum, the part as to which disposition has failed will go as in case of intestacy and the residuum passing under the residuary clause will not be augmented by a ' residue of a residue.' " (*Wright* v. *Wright*, 225 N. Y. 329, 340.) In the present estate the conclusion of intestacy results in a greater degree of equity to the various beneficiaries. It will give some advantage to the object of Alf Hayman's bounty by the receipt of his intestate share which passes as part of his general estate and not by virtue of the exercise of the power. It was possible for him to have given the fund outright to Irene Coleman. The plain intention of the testator to grant to his brother this broad power of disposition and the clear purpose of the brother to confer at least the enjoyment and ultimate disposition upon Irene Coleman has been thwarted by the oversight of the draftsman of the brother's will. The surrogate, therefore, determines that there must be a distribution of the fund to the next of kin of the testator.

Submit decree on notice construing the will accordingly and settling the account.