In the Matter of the Accounting of BANK OF NEW YORK AND FIFTH AVENUE BANK, as Trustee under an Agreement of Trust Made by ALFRED H. SMITH, Now Deceased.

CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Executor and Trustee under the Will of ANN H. SMITH, Deceased, Appellant; BANK OF NEW YORK AND FIFTH AVENUE BANK et al., Respondents.

First Department, November 27, 1951.

*John H. Frey* of counsel (*Baldwin, Todd & Lefferts,* attorneys), for appellant.

*Joseph V. Lane, Jr.,* of counsel (*Joseph Richter* and *Daniel S. Levy* with him on the brief), for Ann C. E. S. Waterous, respondent.

*Hays, St. John, Abramson & Schulman,* for Bank of New York and Fifth Ave. Bank, as trustee, respondent.

SHIENTAG, J. The Chase National Bank of the City of New York, as executor of the estate of Ann Hughes Smith, deceased, appeals from a final order in an article 79 proceeding settling the accounts of Bank of New York and Fifth Avenue Bank, as trustee, under an *inter vivos* trust set up by Alfred Holland Smith, and directing distribution of the trust corpus as follows: two thirds to Ann Charlotte Emery Smith Waterous, respondent, and one third to the Chase Bank, respondent-appellant. Chase Bank appeals from so much of the order below that awards to it as executor of the estate of Ann Hughes Smith only one third of the corpus of the trust and fails to award to it the entire corpus.

There is no dispute as to the facts. On August 2, 1922, Alfred H. Smith, now deceased, as grantor, created an irrevocable trust, appointing as trustee the Fifth Avenue Bank of New York (predecessor of Bank of New York and Fifth Avenue Bank). The corpus of the trust consisted of various stocks and bonds, including 600 shares of a company which had been formed to hold a title to a large estate owned by the settlor.

Under the terms of the agreement of trust, the income of the trust was to be paid to the grantor's wife, Maude Emery Smith (later Mrs. Maude Emery Le Baron) during her lifetime, and upon the death of Mrs. Le Baron, the principal of the trust was to be paid to the grantor's son, Emery Holland Smith, or, should he not then be living, as he should have appointed by will duly admitted to probate or, in default of appointment, to Emery Holland Smith's intestate distributees. Emery Smith predeceased Mrs. Le Baron and died on January 28, 1927, leaving a last will and testament dated May 11, 1917, which was admitted to probate by the Surrogate's Court of New York County on March 16, 1927. In this will, dated some five years prior to the creation of the Alfred Smith trust, there appears the following pertinent provision: " THIRD. I hereby give, devise and bequeath all of my property, real and personal, of every kind and description whatsoever and wheresoever situate, to my Wife, Ann H. [Hughes] Smith."

Ann Hughes Smith died on August 9, 1946, leaving a last will and testament under which letters testamentary and letters of trusteeship were granted and issued by the Surrogate's Court of New York County to respondent-appellant, the Chase National Bank of the City of New York.

Mrs. Le Baron, the life income beneficiary of the trust, died on September 12, 1949, thus making the principal of the trust distributable.

It should be noted that Emery Smith, prior to his death, knew of the existence of the power of appointment granted to him by the agreement of trust, but executed no will subsequent to his will dated May 11, 1917.

At issue in this proceeding is the ownership of the principal of the trust created by Alfred Smith. Its disposition turns squarely on the question whether or not the will of Emery Holland Smith, the pertinent provision of which was quoted above, constitutes an exercise of the power of appointment conferred upon him by the trust agreement. If the power is deemed to have been exercised, the entire principal of the trust, upon the death of Mrs. Le Baron, became payable to the estate of Ann Hughes Smith. If the power was not so exercised, the principal of the trust became distributable, upon Mrs. Le Baron's death, to Emery Smith's distributees — his widow, Ann Hughes Smith, and his daughter, respondent Ann Charlotte Emery Smith Waterous. The court below determined that the will of Emery Smith did not execute his power of appointment, and accordingly directed the trustee, in the final order, to

distribute the principal of the trust, one third to respondent-appellant and two thirds to respondent Ann Charlotte Emery Smith Waterous.

Section 176 of the Real Property Law, derived originally from the Revised Statutes of New York (part II, ch. I, tit. II, § 126) provides: "Real property embraced in a power to devise passes by a will purporting to convey all the real property of the testator, unless the intent that the will is not to operate as an execution of the power, appears, either expressly or by necessary implication." Section 18 of the Personal Property Law is to the same effect.

By his will, Emery Smith quite plainly undertook to devise all of his property. Under the above sections, it would seem to follow automatically that he must be deemed to have exercised his power of appointment as to the trust principal unless a contrary intent appears either expressly or by necessary implication.

Nevertheless, the decision of the trial court below was premised on the theory that the above sections are inapplicable with respect to property concerning which the testator has, in addition to his power of appointment, an independent interest. As to such property, the trial court held, the testator must be presumed to have intended to pass by his will only his independent interest. This supposed distinction, totally without support in the language of section 176 of the Real Property Law or section 18 of the Personal Property Law, apparently arises from the view that otherwise an inconsistency would develop between these sections and section 175 of the Real Property Law. The latter section provides: " An instrument executed by the grantee of a power, conveying an estate or creating a charge, which he would have no right to convey or create, except by virtue of the power, shall be deemed a valid execution of the power, although the power be not recited or referred to therein."

A brief recital of the common law on this question, against the background of which the above sections were drawn, may illuminate their true meaning.

In deciding whether a donee had executed his power of appointment, the fundamental inquiry at the common law was to ascertain the intent of the donee. (See *Blagge* v. *Miles*, Fed. Case No. 1479, 3 Fed. Cas. 559, 566 [1841], 1 Story 426, and *White* v. *Hicks*, 33 N. Y. 383, 392–394.) In this inquiry the cardinal rule of construction was that a power was not to be deemed executed unless the donee had plainly manifested his

intention to do so. (See cases cited, *supra*; see 1 Sugden on Powers, [3d Amer. ed., 1856], ch. VI, § VII, p. 404, footnote 1.) Thus, specific reference to a power was, of course, deemed to manifest an intent to execute it (see 1 Sugden on Powers [3d Amer. ed. 1856], ch. VI, § VII, p. 404, footnote 1). Again, in the absence of any reference to the power, reference in the instrument to the subject matter of the power was also deemed to manifest such an intent, unless the donee had, with respect to that property, an independent interest. (See *Sir Edward Clere's case,* 6 Co. 17b, 77 Eng. Repr. 279; *Blagge* v. *Miles, supra,* p. 567, and Sugden on Powers, *supra.*) The theory underlying the rule is readily apparent. If a donee attempts to convey property as to which his only interest was his power, he must obviously have intended to exercise his power. If the donee had an interest in addition to the power, absent other special indications (see *Vines* v. *Clark,* 111 App. Div. 12 [3d Dept., 1906]), his intent would be obscure. He might have intended to exercise his power of appointment, or he might have desired merely to convey his legal interest. Since an intent to exercise the power was not clearly manifested in that situation, such an instrument was interpreted at the common law as merely conveying the donee's legal interest in the property. (See *Blagge* v. *Miles, supra,* p. 567; *Sir Edward Clere's case, supra;* Sugden on Powers, *supra,* and 4 Kent's Comm. [14th ed., 1896], pp. 387–390.) Thus, the so-called power plus interest rule was merely an application of the basic common-law principle requiring clear manifestation of an intent to exercise a power.

In the light of these common-law principles, the significance of sections 175 and 176 of the Real Property Law is readily apparent. Section 175 made no change in the common law whatsoever. (*Mutual Life Ins. Co.* v. *Shipman,* 119 N. Y. 324, 329 [1890].) It simply restates the rule of construction that, notwithstanding failure to mention the power, reference to the property which is its subject matter suffices to manifest the necessary intent, if the donee had no other right with respect thereto.

In section 176, however, the Legislature, by language clear and unequivocal, undertook to change, with respect to wills purporting to devise all of the donee's property, the fundamental common-law rule of construction. (*Lockwood* v. *Milde-berger,* 159 N. Y. 181, 185.) With respect to this particular kind of testamentary provision, the Legislature has ordained that it is no longer necessary that a donee clearly manifest an intent

to exercise a power of appointment. As the Court of Appeals put the matter in the *Lockwood* case at page 188: "It was not necessary, as we have seen, that she should have had an intent to execute it, for the statute steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property." Since the so-called power-plus-interest rule has significance only as an application of the principle that intent to exercise a power must be clearly manifested, that principle having been abolished by statute with respect to wills purporting to dispose of all the testator's property, the power-plus-interest rule no longer has significance with respect to such instruments.

Of the cases relied upon as instances of the continued vitality of the power-plus-interest rule, only one (*Duff* v. *Rodenkirchen*, 110 Misc. 575 [Sup. Ct., N. Y., 1920], affd. 193 App. Div. 898 [1st Dept., 1920]) concerns an instrument falling within the scope of section 176 of the Real Property Law and section 18 of the Personal Property Law. In his decision in that case, LEHMAN, J., it is true, does appear to suggest that rule's continued applicability to wills devising all the testator's property (see *Duff* v. *Rodenkirchen, supra,* p. 581). Other language in the opinion is to the contrary effect. (See *Duff* v. *Rodenkirchen, supra,* p. 580.) But, in any event, a close examination of the opinion, in the light of its particular facts, plainly indicates that the decision turned on a different ground. The court was confronted with a situation in which the testamentary disposition in the residuary clause, if deemed an exercise of the power of appointment, was invalid under the rule against perpetuities; but if interpreted as a disposition of a reversionary interest the same disposition was valid and could be completely carried out. The court construed it to be a disposition of the reversionary interest. The holding of that case is in no way inconsistent with the interpretation of the pertinent sections here set forth. It should be noted, also, that at the time of his death Emery Smith's remainder interest had been extinguished because he predeceased his mother.

The only question still remaining for determination is whether or not an intent not to execute his power of appointment appears in Smith's will, either expressly or by necessary implication. Certainly no such intent appears expressly, nor in our opinion does it appear by any implication, necessary or otherwise. It is well settled that an intent not to exercise the power cannot be implied from the fact that the will of Emery Smith was executed prior to the date of creation of the power. (*County Trust Co.* v.

*Quencer,* 183 Misc. 922 [Sup. Ct., Westchester Co., 1944], affd. without opinion 269 App. Div. 861 [2d Dept., 1945], affd. without opinion 296 N. Y. 559 [1946].) Not only is there no evidence of an intention not to exercise his power of appointment but, on the contrary, from all the facts and circumstances set forth, it seems plain that Emery Smith, by his will, intended to benefit his wife to the fullest possible extent. We find that he did so effectively.

The order so far as appealed from should be reversed and the entire principal of the trust is transferred and paid over to the Chase National Bank as executor of the estate of Ann Hughes Smith, with costs to all parties appearing herein and filing briefs payable out of the trust. Settle order in accordance with this opinion.

DORE, J. P., COHN, CALLAHAN and VAN VOORHIS, JJ., concur.

Order, so far as appealed from, unanimously reversed and the entire principal of the trust is transferred and paid over to the Chase National Bank as executor of the estate of Ann Hughes Smith, with costs to all parties appearing herein and filing briefs payable out of the trust. Settle order on notice in accordance with the opinion herein.