S. Samuel Di Falco, S.
The testatrix was domiciled in California. Her will created a trust in the sum of two million dollars for the life use of her son Archer, and, in the circumstances which have now come to pass, gave to him a general testamentary power to appoint the corpus.. Archer Huntington died a resident of Connecticut, leaving a will which made no mention of the power to appoint this trust fund. His will has been admitted to probate in Connecticut. The question now at issue is whether he exercised the power of appointment, and if so, to what extent the appointment is valid.
At first glance it may seem as if the State of New York does not in any way touch the compass of this trust administration. However, there was ancillary probate of the will in New York and the ancillary executors paid from the New York assets the entire principal sum bequeathed in trust. The trustee is a New York corporate fiduciary, and the will contains tokens of an intention to have this trust administered in New York. It has in fact been administered in this State since its inception. Before receiving the trust corpus, the trustee duly filed in this court its consent to act as trustee and also the designation which is required by section 95 of the Surrogate’s Court Act as a prerequisite to appointment.
The accounting trustee asks this court for instructions in respect of the distribution of the trust fund, and the answer to that inquiry requires to some extent a construction of the wills of the donor and the donee of the power of appointment.
At the outset it should be noted that the disposition of approximately seven-eighths of the trust fund does not depend, in any practical sense, upon whether or not the appointment was exercised, because the donee of the power is also the sole residuary legatee under the will of the donor. If the power of appointment was not exercised at all, the trust principal would pass to the executors under the will of Archer M. Huntington and be distributed under the residuary clause of that will. If the power of appointment was exercised, it was done by the residuary clause of Ms will. Thus the identity of the beneficiaries is the same in either event. The validity of the dispositions, however, will depend to some extent upon whether the gift comes from Mrs. Huntington or from her son. The entire residuary estate of Archer Huntington is set up in trust for *935 his wife, for life and at her death is to be divided into, eight parts. Seven parts of the trust remainder are for charitable uses and are conceded to be validly bequeathed whether Archer’s will is read by itself or as an integral part of the will of his mother. The remaining share of Archer’s, residuary trust is to be subdivided at his wife’s death into three main shares for the issue of an aunt: and two uncles of Archer Huntington, These three portions are to be further subdivided for those in each group who shall meet two conditions: they must have, been born during the lifetime of Archer Huntington; they must be living at the death of his wife, Each of the subdivided portions is to be held in trust for the beneficiary during his lifetime, and after his death, is to be continued in trust in perpetuity for a named charity.
Of the persons named in the present petition as possible beneficiaries of the trusts to be set up from the one-eighth part of the residue, 22 were in being during the lifetime of the donor of this power of appointment, and the further trusts for their respective lives pose no problem under California law. However, 32 other persons were not in being at her death and concededly an appointment of the property in further trust, for their benefit would present a problem under the Statute of Perpetuities.
The special guardian, representing infants whose shares would be invalidly appointed, contends that the donee did not appoint any of the property constituting this trust fund. He urges payment of the entire fund to the executors under the will of Archer Huntington, as the personal representatives of the deceased residuary legatee under the will of this testatrix. The charitable organization which is to take the one-eighth share in perpetuity after the individual life uses (as well as other interests under his will) argues that the residuary clause of the donee’s will operated as an appointment of the property, and that insofar as it appointed to persons not in being at the death of the donor, the appointment is illegal. It asks that the court determine the appointment to be effective as far as possible, and that it, therefore, excise the invalid life uses and accelerate the vested charitable interest. The other charities contend that the power of appointment was exercised, and they urge payment of the entire fund to Archer Huntington’s testamentary trustees. The only practical difference to most of them between exercise and nonexercise of the power is the total amount of the charges, if any, which might fall upon the property by its passage through the testamentary estate of Archer.
*936 All parties are agreed that the exercise of the power of appointment is to be tested by the law of California, the domicile of the donor of the power. (Restatement, Conflict of Laws, § 288.) Section 125 of the Probate Code (California), as construed by the courts of that State, provides that a bequest of all the testator’s property passes all the property which he was entitled to dispose of by will at the time of his death, including property embraced in a power of appointment. (Matter of Carter, 47 Cal. 2d 200; Childs v. Gross, 41 Cal. App. 2d 680.) Concededly, the will of Archer Huntington would operate as an exercise of this power of appointment unless a contrary intention is manifested by Ms will.
The special guardian reads the California statute (Probate Code, § 125) and its New York counterpart (Personal Property Law, § 18) as quite different in respect of the force of the statutory presumption in favor of the exercise of the power. In cases where our statute is applicable, the- intent not to exercise the power must appear “ either expressly or by necessary implication”. An intent not to execute the power “must not be implied unless it so clearly appears that it is not to be avoided.” (Lockwood v. Mildeberger, 159 N. Y. 181,186.) The California statute does not in terms refer to any contrary intent. It has been said that the California statute is read into the will, and in the light of that statute, the search for intention is conducted (Matter of Carter, 297 P. 2d 783, 786-787, revd. 47 Cal. 2d 200). Whether or not the difference in the two approaches is more a difference of form than of substance, is of no great consequence here. Even the New York rule would admit the force of the adverse factors in this will (see opinion of Lehman, J., in Duff v. Rodenkirchen, 110 Misc. 575, affd. 193 App. Div. 898, explained in Matter of Smith, 279 App. Div. 140, 115, affd. 304 N. Y. 612). However, it is patent that the decision in Duff v. Rodenlcirchen turned upon the fact that the testamentary dispositions of the donee could be completely carried out only if they be construed as making gifts of the donee’s own interest in the property rather than as appointing the same property under the power given to him by his father. This distinction is very well expressed in Matter of Smith (supra) where the court said (p. 145): “ The court was confronted with a situation in which the testamentary disposition in the residuary clause, if deemed an exercise of the power of appointment, was invalid under the rule against perpetuities; but if interpreted as a disposition of a reversionary interest the same disposition was valid and could be completely carried out. The court construed it to be a disposition of the reversionary *937 interest.” In other words, the equities in Duff v. Rodenkirchen affected the construction of the statute and the construction of the will. Consideration of the equities and the full effectuation of the son’s testamentary intent in the present case leads us to the very same result but they point out a different path to that goal.
There are in litigation in the Supreme Court six inter vivos trusts of Mrs. Huntington, each granting a power of appointment to her son and each dependent to some extent upon a construction of his will. The alternatives to a valid exercise of the power vary among the different instruments but are generally different than in this case. There are other differences, to be sure, between those cases and this. None of those cases is now before this court and none of them directly concerns us here. However, the execution of the testamentary plan and purpose of Archer Huntington in respect of the fund accounted for in this court should not be directed under so broad a declaration of principle that it might serve to frustrate his plan and purpose in respect of other instruments. It is possible to effectuate completely the purpose of both donor and donee with respect to the fund now before the court and to confine that decision to the particular controversy now before the court. The court, therefore, prefers to base its decision upon the rule that will affect only the case pending before it.
Under California law, except for charitable uses (Cal. Const., art. XX, § 9), the absolute power of alienation cannot be suspended by any limitation or condition for a period longer than 21 years after some life in being at the creation of the interest (Cal. Civ. Code, § 715.1), and suspension of the power to alienate the subject of a trust, other than the power to sell and reinvest the proceeds, is a suspension of the power of alienation within section 715.1 (Cal. Civ. Code, § 771). The common-law rule of powers is in force in California. (Matter of Sloan, 7 Cal. App. 2d 319, 332.) While there seems to be no decision in California directly bearing upon the point, the general rule is that the period during which the power of alienation may be suspended is to be measured from the creation of the power of appointment, not from its exercise. (Restatement, Property, § 392; Ann. 1 A. L. R. 374; Ann. 101 A. L. R. 1282; Ann. 104 A. L. R. 1352.) All counsel thus assume that if Archer Huntington assumed to exercise that power, he could not lawfully suspend the power of alienation during the lives of persons who were not in being when his mother, the testatrix herein, died.
*938 We shall therefore assume, without deciding the point, that Archer Huntington attempted to exercise the power of appointment in the residuary clause of his will. The exercise would be in part invalid. When an appointment of property is in part valid and effective and in other parts void and ineffective, the question arises as to whether all must fail or part may be salvaged. The rule as set forth in the Restatement of Property is that the valid portion of the appointment be given effect, “ unless (a) the two parts are so mingled that it is impossible to fix the line of division between them, or (b) the donee’s scheme of disposition is more closely approximated by allowing both parts to pass in default of appointment than by treating as valid the latter part of the appointment and allowing only the property covered by the former part to pass in default ’ ’ (§ 362; see, also, 5 American Law of Property, pp. 599, 600; 5 Powell on Real Property, p. 659).
California applies the same rule to determine whether valid trusts may be separated from trusts which offend the Statute of Perpetuities. " The real question presented where a Will contains both valid and invalid provisions is whether the two are so parts of a single plan or scheme or otherwise so dependent one upon the other that by avoiding the invalid provisions and allowing the valid to stand there will result a disposition of the estate so different from what the testator contemplated or so unreasonable that it must be presumed that the testator would not have made the valid provisions if he had been aware of the invalidity of the others ”. (Matter of Van Wyck, 185 Cal. 49, 62; Matter of Sahlender, 89 Cal. App. 2d 329; Matter of Maltman, 195 Cal. 643; Matter of Troy, 214 Cal. 53.) “ The best the court can do is to make an informed guess as to what the testator would have intended had he known that his expressed plan was partially invalid.” (Matter of Sahlender, supra, p. 351.) The California courts have frequently cited with approval the statement in Darling v. Rogers (22 Wend. 483, 495) that where “ a will is good in part and bad in part, the part otherwise valid is void, if it works such a distribution of the estate, as from the whole testament taken together was evidently never the design of the testator.”
If we attempt to give effect to part of the appointment and to excise only that part which offends the Statute of Perpetuities, the intent and purpose of Archer Huntington will be frustrated to whatever extent there is excision from his will. It is pointed out that something less than 10% of the fund will be infected with invalidity. However, if we should strike down the entire appointment as invalid, the fund would go to Archer’s *939 executors and Ms will would be made 100% effective. The choice is not difficult. Justice and equity require the court to make the testamentary plan 100% effective rather than anything less than 100%. The court, therefore, directs the trustee to turn over the net principal of the trust fund to the executors and trustees under the will of Archer Huntington to be distributed under the residuary clause of his will.
The court has assumed that he intended to exercise the power of appointment. If he did not intend to exercise it, the net principal of the trust fund would nevertheless be payable to his executors and trustees to be distributed under the residuary clause of Ms will.
Submit decree on notice construing the will and settling the account accordingly.