S. Samuel Di Falco, S.
In this final account of the surviving trustee, the preliminary issue relates to the appointment of the trust remainder by the now deceased income beneficiary. More specifically, the question is whether she had the power and authority to appoint the remainder in further trust or was limited to an outright and absolute appointment to the specified class of appointees. If the donor’s will be construed to grant the donee authority to appoint in further trust, a question will arise as to the extent to which the appointment is effective, because certain of the trusts created by the donee are concededly measured by the lives of persons who were not in being at the donor’s death.
The nature and scope of the power of appointment and the extent of the limitations placed upon it, depend upon the terms of the instrument which created the power. (1 Scott, Trusts [2d ed.], p. 168; Matter of Kennedy, 279 N. Y. 255, 263.) We must, therefore, examine the terms of the will of the donor of the power.
The trust was for the life use of the testator’s widow. The will did contain provisions for the earlier termination of the trust in the event of the death of all of the testator’s descendants during the life of the widow or in the event that the widow should remarry, but those contingencies did not occur. The trust for her benefit ended at her death. The donor’s will provides that ‘ ‘ upon her death the principal thereof shall be assigned, transferred, delivered and paid to such of my children and the lawful issue thereof or to such one or more of them, and in such proportions as my said wife shall designate and appoint by her last will and testament, and in default of such appoint *903 ment or of a complete appointment under such last will and testament, the principal thereof or so much thereof as shall not have been effectually so appointed, shall be assigned, transferred, delivered and paid to my children living at the time of the death of my wife and to the then living lawful issue of any children of mine who shall have theretofore died in equal shares, per stirpes and not per capita.” There are provisions for distribution of the principal to children and their issue in the event of the remarriage of the widow or to others in the event that for any reason the prior dispositions had become inoperative.
The widow was survived by two sons and by four children of a deceased daughter. One of the sons has one child; the other son has four children. It is not disputed that all of these descendants of the testator and his wife are members of the class to which the wife could properly appoint the fund. It will be noted that under the terms of the donor’s will, in default of appointment, each son would take one third of the principal and each of the daughter’s four children would take one twelfth.
The widow’s will does not mention the power of appointment at all. However, her will disposes of all of her property and by virtue of section 18 of the Personal Property Law the power is deemed exercised by the residuary clause of her will. No party even suggests that a contrary intent is discernible in her will. That instrument divides her residuary estate in three equal parts. One part is set up in trust for each of the sons, with income payable to him for life. The corpus of the trust for one son is bequeathed at his death to “ his children per stirpes.” The second son is given the power to appoint by will the corpus of his trust. If he shall fail validly to appoint the fund, the whole or so much as is not validly appointed is to be divided among the issue of all,of the donee’s children. Both trusts may be invaded in the discretion of the widow’s trustees in case of “ an emergency”. There are different limitations on the permissible extent of invasion in each of the two trusts. The third share of the widow’s estate is to be divided into as many trusts as there shall be children of the deceased daughter who shall survive their grandmother. Each such grandchild is to enjoy the income of his or her trust, and upon his or her death, the corpus is to be divided among all of the then living issue of the deceased daughter. None of the daughter’s descendants was in being when the testator died and hence an appointment in further trusts for their respective lives would concededly be invalid. The accounting trustee, the two sons of the testator and the special guardian of the four children of the daughter, *904 unite in construing the donor’s will as limiting the donee to an outright and absolute appointment of the fund. They argue that she has exceeded her power and authority, that the appointment is wholly ineffective, and that the entire fund is to be divided among them as directed in the donor’s will.
On the other hand, the special guardian of the descendants of the two sons argues that the widow’s appointment is valid and effective, at least insofar as the trusts for the sons are concerned. Under such construction, his infant wards would be presumptive remaindermen of the two trusts which, together, embrace two thirds of the entire fund. His wards have no interest in the fund appointed to the daughter’s issue.
There is, as Professor Scott points out, 1 ‘ a tendency to construe with increasing liberality the language of the instrument in which the power is conferred, and to hold that the donee of the power has broad discretion as to the manner in which he shall exercise it in favor of the members of the class, unless it appears that the donor intended to restrict him”. (1 Scott, Trusts [2d ed.], p. 170.) In the Restatement of Property, it is said that if, “ but only if, the donor does not manifest a contrary intent, the donee of a special power can effectively * * * (b) appoint present or future interests or both * * * (e) appoint interests to trustees for the benefit of objects.” (§ 358.) The donee of a special power “ can effectively exercise it by creating a general power in an object of the special power, unless the donor manifests a contrary intent ”. (Id, § 359.) In the Comment to section 358, it is said that “ [1] anguage of the donor which creates the power by the use of one of the customary formulas referring to the manner of exercise of the power only in general terms is not to be taken as a manifestation of ‘ a contrary intent.’ Thus, A, the donor, does not manifest an intent that any of the*types of appointment mentioned in this Section shall not be made when he provides that property shall be held in trust for B for life and * * * ‘ then in trust to pay the principal to such children of B and in such proportions as B shall appoint. ’ ” The Comment in section 359 is similar in tenor.
A careful reading of the donor’s will does not disclose any text which can fairly be said to restrict or limit the donee’s power to appoint in further trust. Those who read such a limitation in his will, do so by implication. They base their implication upon two expressions used frequently by the donor. First, he several times used the words, “ this trust shall terminate ”, and he used those words when referring to the death of *905 his wife. Thus his will says: £< Tf this trust shall not be terminated as hereinbefore last provided [i.e., termination by all descendants predeceasing the widow], then upon the death of my said wife, if she shall not have remarried after my death, or upon the remarriage of my said wife if she shall remarry after my death, as the case may be, this trust shall terminate; if this trust shall terminate by reason of the death of my said wife, she not having remarried after my death, then upon her death the principal thereof shall be assigned, transferred, delivered and paid to such of my children and the lawful issue thereof or to such one or more of them, and in such proportions as my said wife shall designate and appoint * * i:= ”. (Emphasis added.) The continual reference to the trust “ terminating ” upon one event or the other is said to indicate an intent that the appointment shall not be in further trust. Secondly, the use of the words ‘‘ assigned, transferred, delivered and paid” are said to import outright and absolute payments of the fund rather than continuance in further trust.
With respect to the words “ this trust shall terminate ”, it is clear that the donor was speaking of the trust which his will created. The term of the trust which he created, was dependent upon the happening of one of several contingencies, and in each case when he referred to termination of the trust, he meant only that the term which he conceived, was to come to an end. He did not command his widow to keep the property in further trust, nor did he expressly forbid her to do so. He gave her power to choose the particular descendants who were to share in the fund and the proportion each was to receive. When he said that the trust which he created was to come to an end, he did not necessarily say that the donee must give his descendants immediate possession of their appointed shares. He left future developments to the discretion of his donee. The testator did not know who the ultimate taker or takers would be, what would be the shares, or what would be the particular circumstances or conditions under which they would take. All this was left to the future and to the donee. The words ‘1 this trust shall terminate ” reasonably refer only to the trust that the donor was then talking about. They fall far short of meaning that there shall be no further trust under the donee’s appointment.
The words “assigned, transferred [and] delivered” add nothing to the word “paid”. Yet a direction to “pay the principal to such children of B and in such proportions as B shall appoint ” do not, in the words of the Restatement [Property], manifest an intention to forbid an appointment of future *906 interests or an appointment in trust (§ 358). Such expressions are regarded as part of the customary formula for disposing of the fund pursuant to an appointment.
Matter of Kennedy (279 N. Y. 255, supra) is not authority for denying to the donee the power to appoint the fund in further trust. As the parties point out, the limits of that decision have so often been discussed by the courts that extended discussion here is unnecessary. The Court of Appeals said that it “ must look exclusively to the will of Mr. Kennedy to determine the terms, scope and limitations upon the power ” (p. 263) and that his will gave to the donee only the power to appoint to children or to issue of deceased children. Upon the donee’s death, there were no descendants of deceased children. Hence her authority was to apportion the property between the two children. She ‘ ‘ exceeded her power when she attempted to appoint the distribution of the corpus of the trust among the issue of her children.” (Id., p. 264.) The will of Bryan Sheedy is much broader in scope. It authorizes his widow to appoint to any children “ and the lawful issue thereof ” in such proportions as the widow should designate. In giving to some descendants a limited interest, and to others a remainder interest, the donee was acting within the limits of her authority.
There are, as the parties state in their arguments, equitable considerations which might incline one to the result where the descendants would take in default of the exercise rather than under a partial exercise of the power. Such considerations have their proper place. They should not, however, be allowed to affect the development of the general rules of law governing the exercise of powers of appointment.
It is not disputed that if the power of appointment be exercised, it is validly exercised in part and invalidly exercised in part because it would suspend the absolute ownership of personal property during the lives of persons not in being at the death of the testator. The question then is whether the entire appointment must fail or whether a part of it can be validated and only a part struck down. In Matter of Huntington (10 Misc 2d 932, 938) this court quoted with approval the following principle of construction: ‘ ‘ The rule as set forth in the Restatement of Property is that the valid portion of the appointment be given effect, ‘ unless (a) the two parts are so mingled that it is impossible to fix the line of division between them, or (b) the donee’s scheme of disposition is more closely approximated by allowing both parts to pass in default of appointment than by treating as valid the latter part of the appointment and allow *907 ing only the property covered by the former part to pass in default ’ (§ 362; see, also, 5 American Law of Property, pp. 599, 600; 5 Powell on Beal Property, p. 659).” That same principle must be applied here. If we separate the good from the bad, the two sons will each have the benefit of the one-third share appointed for him and an additional one ninth each of the property invalidly appointed. The children of the daughter, to whom one third of the fund was appointed, will share together in the remaining one ninth. If the property passes in default, each son will take one third and the daughter’s issue, the remaining third. In that event the equality for which both donor and donee made provision will be preserved. The only difference with respect to the sons is that they would take outright instead of beneficiaries of a trust. The donee was obviously thinking only of her own personal estate and giving no real thought to the appointive fund. That fund would be embraced within her will only because of the statute and her failure clearly to disclaim any intention of exercising the power. It seems to the court that every rule of reason and justice requires that in this case the invalidity in part of the appointment be held to infect the whole appointment, and that it must be struck down in its entirety rather than salvaged in part.
The final question is whether the will of the donor evidences an intent to uphold a partial appointment when part fails for invalidity. His will says that “ in default of such appointment or of a complete appointment under such last will and testament, the principal thereof or so much" thereof as shall not have been effectually so appointed, shall be assigned, transferred, delivered and paid ” to the children. The testator is here dealing with an appointment of less than the entire fund or an appointment which is determined to have been effective as to a portion of the fund. His will does not command that in all cases the good and bad must be separated or that all that is capable of salvage must be preserved. He does not state the rule to be applied; he deals rather with the result after the proper rules have been applied. There is nothing in his will which requires the court to validate a part of the appointment when to do so would rob the donee’s plan of its essential feature.
The court, therefore, holds that one third of the appointive property shall be paid to each of the sons and that the final one third shall be paid to the issue of the daughter, per stirpes.
The parties have agreed to extend the time to file objections to the account. The special guardian of the infant remainder-men has not yet reported. After disposition of any issues that *908 may hereafter he formulated for decision, a decree shall be submitted, on notice, construing the will in accordance with this decision.