8 Cal.App.3d 168 (1970)
87 Cal. Rptr. 55
Estate of FRED M. COX, Deceased.
J.K. STICKNEY, JR., as Executor, etc., Petitioner and Respondent,
v.
PATRICIA DUNCAN SNYDER et al., Objectors and Respondents.
HOUSTON I. FLOURNOY, as State Controller, Contestant and Appellant.
Estate of FRANCES L. COX, Deceased.
J.K. STICKNEY, JR., as Executor, etc., Petitioner and Respondent,
v.
PATRICIA DUNCAN SNYDER et al., Objectors and Respondents.
HOUSTON I. FLOURNOY, as State Controller, Contestant and Appellant. (Consolidated Cases.)
Docket Nos. 9913, 9914.
Court of Appeals of California, Fourth District, Division One.
May 26, 1970.
*174 COUNSEL
Myron Siedorf, Walter H. Miller and Phyllis Kelly Fairbanks for Contestant and Appellant.
Provence & Provence and Charles B. Provence for Objectors and Respondents.
Ortlieb & Moats and Martin Ortlieb for Petitioner and Respondent.
OPINION
WHELAN, J.
The State Controller of California, Houston I. Flournoy (Controller) has appealed from each of two orders fixing inheritance taxes in the respective estates of Fred M. Cox (Fred) and Frances L. Cox (Frances); he has appealed also from an order made in proceedings consolidated for trial in each of the two estates, which are denominated petitions to determine interests in the estates. All matters have been consolidated for the purposes of appeal.
A motion made to dismiss the appeals from the order determining interests in the estates was denied.

THE BACKGROUND OF THE CONTROVERSY
Fred was the second husband of Frances; by her first marriage she had one child, Kenneth Duncan (Kenneth), who married Patricia, now Patricia Duncan Snyder, on April 24, 1955. Patricia obtained a final decree of divorce from Kenneth in 1965.[1] One child, Brett Duncan (Brett) was born of that marriage on April 6, 1956.
Iva Wells (Iva) was the mother of Frances, and of Ralph Gordon Wells, father of Dianna Wells Moyer (Dianna).
Iva died in 1957.
Fred had three sisters: Alice Cox Hilker (Alice), Adelaide Taylor (Adelaide) and Berta Randall, deceased (Berta). Berta had two children: Claude Randall and Virginia Randall Graham. Alice had four children: Walter R. Hilker (Walter), Fred M. Hilker (Fred Hilker), Claude Hilker (Claude) and Lucille Hilker (Lucille).
Among them, Walter, Fred Hilker and Claude had several children: *175 Ann, Walter III, Jay Ann, Allison, Amy and Andrea, all but one of whom were born after 1953.
On February 28, 1953, Fred and Frances executed wills handwritten by an attorney, Jefferson K. Stickney. Each will provided that should the spouse of the testator survive the testator by six months such spouse should take all; otherwise, one-quarter of the estate of the testator should go to Lucille if she should be alive at the time of distribution, if not, to Fred's three Hilker nephews; another one-twelfth was to go to Walter if he were alive at the time of distribution, if not, to Fred Hilker and Claude; another one-twelfth was to go to Fred Hilker if he were alive at distribution, if not, to Walter and Claude; another one-twelfth was to go to Claude if he were alive at distribution, if not, to Walter and Fred Hilker; three-eighths was to go to Kenneth if he were alive at distribution, if not, to Iva; one-eighth was to go to Iva if she were alive at distribution, if not, to Dianna.
On February 24, 1961, Fred and Frances executed a trust instrument naming San Diego Trust and Savings Bank (Bank) as trustee. Thereafter four parcels of real property were transferred into the trust.[1a]
The trust was revocable during the joint lives of the trustors, during which they were to receive all income and have power of management. Upon the death of the first to die, the trust estate was to be divided between a Trust "A" and a Trust "B." Trust "A" should receive all the surviving spouse's share of community property plus enough other property to exhaust the marital or community property exclusion. Trust "B" was to receive the balance of the trust assets.
The survivor was to receive all income and have a right to invade the principal of Trust "A"; the trustee additionally was given authority in its sole and absolute discretion to apply for the use of the survivor principal from Trust "B" as well as from Trust "A."
The trust provided: "Each Settlor shall have the absolute right and power without restriction, to appoint his or her share of the trust estates including his or her share of community and separate property. Such power of appointment shall be exercisable by will and may be exercised in favor of the Settlor who is testator/trix of that particular will, or the creditors of said Settlor, or said Settlor's estate or any other person or organization."
It next provided that should either trustor fail to appoint his or her share of the trust estate, then his or her share should devolve and pass as follows:
One-third of Fred's share should go to Lucille; two-thirds should be divided into as many shares as there were then surviving children of Claude, *176 Walter and Fred Hilker, the income to be applied for the benefit of such children until they should successively reach the age of 21 years, each to receive a share of principal as he or she attained that age, the share of any failing to do so to be divided among those that did. No child was mentioned by name.
The share of Frances was to be held in trust and $200 of income, so long as it did not exceed one-fifth thereof, was to be paid monthly to Kenneth; all the remainder of the income was to be applied for the use of Brett until his 21st birthday, then to be paid to him until age 25, when enough of principal was to be set aside to continue payment of $200 per month to Kenneth for life. Brett was to receive the remaining principal in installments. Should he die before all was distributed to him the remainder should go to his issue.
Among other provisions of the trust were these: "Notwithstanding any of the foregoing provisions should the wife's share become exhausted during her lifetime, then upon her death, the husband's share shall be equally divided between Lucille Hilker and Brett Duncan."
Should both Fred and Frances die under circumstances that made it impossible to say which died first, it would be conclusively presumed Frances had survived Fred. The trust included these provisions: "Should the husband of Settlors survive the wife of Settlors and so long as said husband is alive and competent he shall have the right and power to alter, amend and revoke Trust `A' and Trust `B.' Should the wife of Settlors survive the said husband she shall have the power to alter, amend, and revoke only with respect to Trust `A.'
".... .... ....
"The interests of the beneficiaries of Trust `A' and Trust `B' in principal or income shall not be subject to claims of their creditors or others nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered."[1b]
The trust instrument was approved by Charles Provence, an attorney acting for Fred and Frances.[1c]
*177 Fred died on December 20, 1966; Frances, on March 31, 1967. The wills of both, dated February 28, 1953, were admitted to probate.
The inventory in each estate matter listed "Decedent's taxable interest in and to Trust No. P.T. X-XXXX-XX-X per Inventory thereof prepared by San Diego Trust & Savings Bank, as Trustee."
The estate of Fred subject to administration was appraised at $11,315; that of Frances, at $19,802.01; joint tenancy property also was listed in the inventory of Fred's estate appraised at $11,699.28.

THE NATURE OF THE CONTROVERSY
Reports of the inheritance tax appraiser in each estate set a tax based upon the assumption Fred and Frances Cox had exercised the powers of appointment by their wills executed before the creation of the trust.
In September 1968, Bank, as trustee, Brett and Patricia (respondents) filed a joint objection to the report of the inheritance tax appraiser in each estate matter, alleging that neither Fred nor Frances had exercised the power of appointment by will.
There was filed in each estate matter, on October 10, 1968, a document entitled, "Petition to Determine Interest."[2] That petition gave a history of the creation of the trust, told of the family relationships, the filing of the objections to the report of the inheritance tax appraiser, and of the contentions made by the objection. It contained this language: "Petitioner contends that, in order to properly determine the inheritance tax due and payable by this estate, it must first be determined who is entitled to receive distribution of the probate estate. The Court must also determine what assets comprise the estate and who are entitled to distribution of the assets of the estate as well as of the inter vivos trust created by the Testator, and who and in what manner these assets are to be distributed, including specifically whether or not any trust assets are to be included in or pass through the probate estate, and the various rights and duties of the Petitioner, as Executor, as well as of the Trustee, itself."
The prayer was as follows: "WHEREFORE, Petitioner prays that the Court determine those who are entitled to distribution of the estate and of [the] trust, and for all other proper orders."
The trial court took judicial notice of the probate file in each estate matter and they have been brought before this court. In each the only persons *178 who filed a statement of interest in the estate were Bank, as trustee, and the respondents Brett and Patricia, in a joint statement.[3]
A single hearing was had covering the objections to the report of the inheritance tax appraiser and the petition to determine interest filed in each estate matter. The court, sitting in probate, in each matter made its order fixing tax based upon written findings of fact that the powers of appointment had not been exercised by the wills of the respective decedents.
A separate set of findings, which included nearly all the findings in support of the orders fixing tax, was made covering both petitions to determine interest. A similar finding was made that the will of neither decedent exercised a power of appointment. A single judgment was based upon that set of findings.
The judgment included the following: "The property conveyed and transferred to the Trustee of said trust by the said Settlors thereof, and said trust estate, is not subject to the said Last Will of either of said decedents, FRED M. COX or FRANCES L. COX; and said trust estate is to be held, administered and distributed in accordance with the terms and provisions of said trust.
"The interests of the beneficiaries of the trust are hereby determined to be in accordance with and as set forth in said trust indenture. The interests of the beneficiaries under the said Will of FRANCES L. COX, in and to her probate estate proper, are hereby determined to be in accordance with and as set forth in her said Will; and the interests of the beneficiaries under the Will of FRED M. COX, in and to his probate estate proper, are hereby determined to be in accordance with and as set forth in his said Will.
"J.K. Stickney, Jr., as Executor of the Will of FRED M. COX, and also as Executor of the Will of FRANCES L. COX, and the SAN DIEGO TRUST AND SAVINGS BANK, a corporation, as Trustee under said trust, are each hereby instructed that they are to discharge their respective duties in accordance with the foregoing."
The file in each of the estate matters brought before this court discloses that a copy of a notice of the hearing and a copy of a "Petition to Determine Interest in the Estate" were mailed on October 10, 1968, 15 days *179 before the hearing date, to some of the persons whose names have been mentioned. That to Kenneth was mailed to a Hollywood address. Also on October 10, 1968, there was mailed to Kenneth a copy of the notice of hearing, without the petition. In that instance, the notice mailed to Kenneth was to an address in Newport Beach.

MOTIONS TO DISMISS THE APPEALS
Although the motions to dismiss the appeals were denied, the bases of the motions were such that they are fundamental to a decision on the merits and therefore must be discussed. Respondents in their brief on appeal assert those grounds as determinative.
The motions are based upon arguments which, if they are sustained, would also dispose of the appeals from the orders fixing inheritance tax. The arguments run as follows:
The petition to determine interest in the estate initiates a proceeding to which Controller is not and may not be a party. The persons before the court in such a proceeding are those who claim an interest in the estate subject to administration. All persons who might have claimed an interest in the estate received notice of the proceeding, which was in rem. Since no person who claimed an interest has appealed from the judgment, that judgment is res judicata as to the fact the powers of appointment were not exercised and is binding upon Controller insofar as the amount of tax is dependent upon the exercise or non-exercise of the powers of appointment.
In support of those arguments, respondents cite Estate of Radovich, 48 Cal.2d 116 [308 P.2d 14], where a decree, pursuant to a contested petition to determine heirship in the estate of an intestate, adjudged a stranger in blood (a foster child) to have in equity the status of an adopted son, entitled to inherit the entire estate; such decree had become final. It was held to be res judicata as to the status of the foster son in a subsequent proceeding in the same estate matter to determine inheritance tax. Since the foster son inherited at all only because he was found to have the equitable status of an adopted son, his interest could not be taxed as of a stranger in blood.
Estate of Erdman, 264 Cal. App.2d 335 [70 Cal. Rptr. 774], held that the Controller in a probate proceeding to fix inheritance tax, was bound by final judgments of the Illinois court in actions brought there by Illinois trustees, which judgments had determined a California resident had not exercised powers of appointment.
We conclude the proceeding, except for the purpose of fixing tax, was not one in rem insofar as it was sought to be determined whether the powers *180 of appointment created by the trust had been exercised, and discuss the reasons hereafter.
On the question whether the powers had been exercised with respect to matters other than the question of inheritance tax, we find the necessary elements of res judicata missing for reasons we discuss.
In this proceeding the court sitting in probate purported to adjudicate property rights under an inter vivos trust and to direct the trustee as to the disposition of the trust assets. The question arises as to the probate court's jurisdiction to do so.[4]
(1) The court in probate is given a continuing jurisdiction over trusts created by will (Prob. Code, § 1120).
The jurisdiction over the trustee of a testamentary trust is said to arise only when the trust estate is distributed to him. (Estate of Phelps, 179 Cal. 703, 709 [178 P. 846]; Estate of Mackay, 107 Cal. 303 [40 P. 558].)
(2) The probate court does not have jurisdiction over an inter vivos trust. (Auslen v. Superior Court, 58 Cal.2d 820 [27 Cal. Rptr. 8, 377 P.2d 72]; Wells Fargo Bank etc. Co. v. Superior Court,[5] 32 Cal.2d 1, 5, 12 [193 P.2d 721]; Estate of Rey, 31 Cal. App.2d 648, 654 [88 P.2d 718]; see also Wilkerson v. Seib, 20 Cal.2d 556, 562 [127 P.2d 904].)
Respondents assert only the probate court could interpret the wills to determine whether the powers had been exercised. No case has been cited in support of that proposition. The cases are to the contrary. (California Trust Co. v. Ott, 59 Cal. App.2d 715 [140 P.2d 79], and other cases cited hereafter.)
The jurisdiction of the superior court under its general equity power to interpret a will was upheld in McCaughna v. Bilhorn, 10 Cal. App.2d 674 [52 P.2d 1025].
Howard v. Bennett, 53 Cal. App.2d 546, 547-548 [127 P.2d 1012], stands for the proposition that where a superior court sitting in probate can give full relief it has exclusive jurisdiction to construe the terms of a will in an estate which it is administering so as to deprive the superior court of *181 jurisdiction to entertain a declaratory relief action for the purpose of construing the terms of said will.[6]
For our purposes, cases involving the question whether a power of appointment has been exercised by the donee's last will and testament fall into two classes.
The first class embraces those powers created by an instrument intended to take effect during the lifetime of the donor; the second, those powers created by the last will and testament of the donor.
The question of the exercise or non-exercise of the power in the first class of cases is uniformly passed upon by a court of general jurisdiction in the exercise of its equity powers, with an exception where the question of the exercise of the power is only incidental to a determination of inheritance tax. Cases that support the rule are California Trust Co. v. Ott, supra, 59 Cal. App.2d 715; Security-First Nat. Bank v. Ogilvie, 47 Cal. App.2d 787 [119 P.2d 25]; Childs v. Gross, 41 Cal. App.2d 680 [107 P.2d 424]; Reed v. Hollister, 44 Cal. App. 533 [186 P. 819]; and Gray v. Union Trust Co., 171 Cal. 637 [154 P. 306], in which the Supreme Court said: "And finally upon this proposition, it should be pointed out that upon the death of Helen Gray intestate it would not be the court in probate which would determine to whom the trust property should go. The class entitled to take would be determined by a court of equity in an action brought by the trustee to determine that precise question." [P. 640]
In a proceeding to fix tax, the probate court's jurisdiction to pass upon the question of the exercise of a power is purely statutory and derives from section 14651, Revenue and Taxation Code, which reads: "The superior court which has acquired jurisdiction in probate of the estate of any decedent shall hear and determine in the probate proceedings all questions relative to any tax imposed by this part on each transfer subject to this part from the decedent to any person sharing in the estate, whether the property transferred is in the estate or not."
In the second class of cases the question is passed upon by the probate court having jurisdiction over the testamentary trust created by the last will of the donor of the power.[7] Such cases are Estate of Reed, 259 Cal. App.2d *182 14 [66 Cal. Rptr. 193]; Estate of Sloan, 7 Cal. App.2d 319 [46 P.2d 1007]; Estate of Masson, 142 Cal. App.2d 510 [298 P.2d 619].
There is the same exception where the inquiry is incidental to a determination of the taxability in the estate of the donee of the exercise or non-exercise of the power. (Estate of Murphy, 182 Cal. 740 [190 P. 46]; cf. Estate of Erdman, supra, 264 Cal. App.2d 335.)
Estate of Carter, 47 Cal.2d 200 [302 P.2d 301], deserves special attention because it might be thought to be precedent for the court in the estate of a donee of a power to pass upon the question whether by her will she exercised a power of appointment under a trust not of her creation.
In fact the power of appointment was over a trust estate created by the last will of the husband of the donee of the power. The probate court that had jurisdiction over the testamentary trust created by the husband made an order finding that the wife, by her will, executed before the husband's death, had not exercised the power without specific mention of it. There were appeals from both orders, so that the jurisdictional question did not arise. The Supreme Court held the power had been exercised. It is, therefore, of no significance that the trial court had made the same order in the matter of the wife's estate apparently growing out of a single hearing.
In some circumstances the superior court sitting in probate has undertaken to dispose of all aspects of a controversy, some of which were properly brought before it in its limited probate jurisdiction and others of which were incidental to the matters properly brought before it, when all necessary parties also were before the court. (Estate of Baglione, 65 Cal.2d 192, 197 [53 Cal. Rptr. 139, 417 P.2d 683]; Estate of Dobbins, 36 Cal. App.2d 536 [97 P.2d 1051].)
In Estate of Baglione, supra, 65 Cal.2d 192, the probate court in fact had refused to exercise equitable jurisdiction and its order was affirmed, but only because the appellant had commenced a second action in the superior court which had determined the controversy.
We need not decide whether the principle declared in Estate of Baglione, supra, 65 Cal.2d 192, is applicable in the present situation because here all parties affected were not before the court; and any application of the Baglione principle requires that all the parties affected be before the court.
But if the Baglione principle were applied, it would still be true that here the door to the court sitting in probate opened to the controversy only because of the objections to the reports of the inheritance tax appraiser. To say that the element necessary to invoke the probate jurisdiction is to be excluded in a review of the result of the exercise of that jurisdiction would be completely anomalous.
*183 Respondents have taken the position that a proceeding in the probate court to determine who are the beneficiaries under a trust is in rem.
Estate of Reed, supra, 259 Cal. App.2d 14, held to the contrary. There, the court said, at page 21: "Mullane discusses at some length the in rem character of some judgments but holds that a proceeding to determine the rights of beneficiaries under a trust is not embraced within the in rem classification and that when the rights of beneficiaries to a trust are inevitably affected, they are entitled to notice and are indispensable parties. The mere statement of this principle as a general proposition, is to accept it."
In analyzing respondents' claim that the judgment has become res judicata as to the only persons entitled to appeal from it, i.e., those who would benefit if the powers had been exercised, we are concerned with two questions: the first, whether the court had jurisdiction over the subject matter; and the second, whether the court had jurisdiction over the necessary parties. For that reason cases are not relevant which hold that persons submitting to the court's jurisdiction over a proceeding by appearing therein and seeking affirmative relief within the court's jurisdiction to grant may not thereafter question the court's jurisdiction over all matters involved. (Guardianship of Garbini, 28 Cal. App.2d 715 [83 P.2d 508]; Estate of Walden, 168 Cal. 759 [145 P. 100].) Likewise irrelevant are such cases as In re Clary, 112 Cal. 292 [44 P. 569], and Estate of Gilmaker, 57 Cal.2d 627 [21 Cal. Rptr. 585, 371 P.2d 321], which were tried on the merits in the probate court, all necessary parties being before the court, without objection to the jurisdiction.
Superficially, it might appear that a single hearing was desirable to determine for all purposes whether the powers of appointment had been exercised. However, if the petition to determine interest had not been filed, the rights of those interested in the trust, so far as the actual ownership of the trust assets is concerned, would not have been affected by an order fixing inheritance tax, on whichever theory it might have been made. (3) The order fixing inheritance taxes, which may incidentally determine questions in regard to succession and beneficial ownership, is not binding except for tax purposes as between those who claim the estate, whether as heirs, legatees or beneficiaries of a trust extrinsic to the will. (Estate of Lloyd, 106 Cal. App. 507, 511-513 [289 P. 892]; Estate of Rath, 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836].)
But if a single hearing were desirable, it would require that all persons interested be before the court. That might have been achieved by a suit in equity joining all persons interested in the determination as defendants, and consolidating the trial of that matter with the hearing on objections to the report of the appraiser.
*184 In such a proceeding, guardians could be appointed to represent the interests of the minors, including the non-existent possible issue of Brett (Code Civ. Proc., § 373.5; Wogman v. Wells Fargo Bank & Union Trust Co., 123 Cal. App.2d 657, 665-666 [267 P.2d 423].)
The procedure adopted was a statutory one under the Probate Code (§ 1080) which is a proceeding in rem (Estate of Wise, 34 Cal.2d 376 [210 P.2d 497]; Estate of Neilson, 57 Cal.2d 733 [22 Cal. Rptr. 1, 371 P.2d 745]) and in which there is a right to a jury trial (Prob. Code, § 1081; Bales v. Superior Court, 21 Cal.2d 17 [129 P.2d 685]). (4) "The sole purpose of such a proceeding is to `determine who are the heirs of the decedent or entitled to distribution of the estate and [to] ... specify their interests.' (Prob. Code, § 1081.) ... `... No other judgment is to be rendered and no disposition whatever is to be made of the estate.'" (Estate of Neilson, 57 Cal.2d 733, 748 [22 Cal. Rptr. 1, 371 P.2d 745].) (5) "`Probate proceedings being purely statutory, and therefore special in their nature, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided. (Smith v. Westerfield, 88 Cal. 374, 379 [26 P. 206].)' (Estate of Strong, 119 Cal. 663, 666-667 [51 P. 1078]; see, also, McPike v. Superior Court, 220 Cal. 254, 258 [30 P.2d 17]; Bales v. Superior Court, 21 Cal.2d 17, 24 [129 P.2d 685]; 13 Cal.Jur.2d § 10, p. 463.)" (Estate of Quinn, 43 Cal.2d 785, 787 [278 P.2d 692].)
The result as a determination under section 1080, Probate Code, was a nullity. The judgment was that the trust assets were not a part of either estate; but went on to say who were entitled to those assets. As to the assets that constituted the estates, they were to go as provided by the wills, thereby eliminating any thought that the wills required interpretation in that respect.
The inconsistency of the situation may have become apparent. On December 17, 1968, the last day of the hearing, a minute order was made that the executor might amend his petition (to make it a petition for instructions).[8]
On December 19, 1968, an amendment to the petition was filed. By it the caption was amended to read, "Petition to Determine Interest and for Instructions." The prayer was amended to read: "WHEREFORE, Petitioner prays that the Court determine those who are entitled to distribution of the estate and of said trust, and that your Petitioner be instructed accordingly and for all other proper orders."
*185 It does not appear that any date was set for the hearing of a petition for instructions. The amendment may have been viewed as one made to conform to proof.
Findings and judgment were signed on January 16, 1969.
Section 588, Probate Code, provides: "In all cases where no other or no different procedure is provided by statute, the court on petition of the executor or administrator may from time to time instruct and direct him as to the administration of the estate and the disposition, management, operation, care, protection or preservation of the estate or any property thereof. Notice of the hearing of such petition shall be given for the period and in the manner required by section 1200 of this code."
(6) Section 588 does not provide a method for determining who will be entitled to distribution of the assets of an estate. (Estate of Hoffman, 265 Cal. App.2d 135 [71 Cal. Rptr. 230].) For a stronger reason it cannot provide a method for determining who are entitled to share in property that is not part of an estate.
While title to property may be tried as between the estate and the personal representative of the estate or those in privity with him (Estate of Howe, 31 Cal.2d 395 [189 P.2d 5]; Schecter v. Superior Court, 49 Cal.2d 3, 9-10 [314 P.2d 10]), section 588 does not confer jurisdiction on the probate court that it would not otherwise have to try title to property. (Estate of Scarlata, 193 Cal. App.2d 35, 41 [14 Cal. Rptr. 184]; Central Bank v. Superior Court, 45 Cal.2d 10 [285 P.2d 906].)
In the proceeding under review there was no question as to the estate's property concerning which the executor could be instructed or directed, since the appointees of a power take from the original donor of the power and not from the appointer or donee of the power. (Estate of Bowditch, 189 Cal. 377 [208 P. 282, 23 A.L.R. 735];[9]O'Neil v. Ross, 98 Cal. App. 306, 321 [277 P. 123]; Gray v. Union Trust Co., 171 Cal. 637 [154 P. 306]; see also Estate of Baird, 120 Cal. App.2d 219 [260 P.2d 1052]; Estate of Masson, supra, 142 Cal. App.2d 510; and cases cited in 150 A.L.R. 723.) In fact the judgment as we have quoted it did not direct or instruct the executor as to anything he was to do or not do.
(7) Assuming the court had jurisdiction to determine the rights of all interested persons under the trust, it was only because such a determination was incidental to the matter over which the court's jurisdiction is unquestioned, *186 the determination of the tax. Clearly, therefore, Controller has standing to appeal from the judgment as well as from the orders fixing tax, since his failure to do so might give rise to a claim that as to him the matter was res judicata.
Neither the petition for instructions nor the petition to determine interests was one under which the probate court had jurisdiction to determine rights under an inter vivos trust, since it was patent that if either of the powers had been exercised it was not exercised in favor of the donee's estate.
The filing of the objections to the reports of the inheritance tax appraiser properly raised for determination by the probate court the question whether the tax should be fixed as though one or both powers had been exercised. If it be conceded that in the exercise of that jurisdiction the probate court could bring in all parties interested under the trust, it must be recognized that such persons were not brought in other than as they might be affected by an attempted in rem disposition in a proceeding that could not be used for the purpose.
Of those possibly to be affected by a determination whether the powers were exercised, only the respondents invoked the jurisdiction of the court in the proceeding under section 1080, Probate Code.
Whether the failure of any of the persons interested under the trust to appeal makes the judgment res judicata as to them we need not and we do not pass upon. It is clear that the order fixing tax would not be res judicata as to rights as among those persons.

QUESTION OF THE EXERCISE OF THE POWERS
Among the findings of the trial court are these: "XII In preparing and executing the said trust, the decedents took into consideration every important change in their family relationships between the dates of the Wills and the date of the trust. Further, taking into consideration the circumstances of the parties and the provisions of both the trust and the Wills, the Court finds that each of the decedents considered and intended said trust to be their estate plan, to minimize probate expenses thereby, and intended and expected that the trust estate be distributed in accordance with the provisions of the trust.
"XIII No beneficiary under either Will or under the trust has made the contention that by virtue of Section 125 of the Probate Code the Will of either decedent executes the power of appointment contained in the trust, the Controller of the State of California has made such contention as to each Will; the determination of such issues is of substantial economic importance to the several beneficiaries under the trust and under each *187 Will, and the Executor of each Will and the Trustee of the trust are entitled to have such issues determined and to be instructed with reference thereto.
"Taking into consideration only the identity of the beneficiaries under the trust and under the Wills, and the complex provisions of the trust as compared to the simple provisions of each Will; and the provisions of the trust which are inconsistent with the provisions of each Will, including but not limited to the provisions of the trust which give the survivor the immediate right to income and principal upon the death of the first of the Settlors to die, as contrasted to the provisions of each Will which required the survivor to live for a period of six months after the death of the first before the survivor would take; and the distributive provisions of the trust and the manner thereof as compared to those in each Will, the Court finds that neither the said FRED M. Cox nor the said FRANCES L. Cox intended that the general power of appointment reserved to them in Article THIRD of the trust should or would be subject to being executed by either of their said respective Wills, executed on February 28, 1953, and neither did either of them intend that the property which they conveyed and transferred to the Trustee under said trust should be subject to their said Wills, or either of them; and the said FRED M. Cox, deceased, never intended at any time, by his said Will of February 28, 1953, to execute the said power of appointment reserved to him in said trust; and the said FRANCES L. Cox, deceased, never intended at any time, by her said Will executed by her on February 28, 1953, to execute the power of appointment reserved to her in said trust."
The findings and judgment therefore are based upon three factors: (1) oral testimony, as to the making of the wills, as to the creation of the trust, and as to the family relationships and situation; (2) the internal structure of the trust agreement and its provisions; the internal structure of the wills and their provisions; and (3) the failure of any person other than Controller to claim that under section 125, Probate Code, the powers had been exercised.

ORAL TESTIMONY
We may consider first the oral testimony as to all of which Controller made objection.
(8) It can never be said that extrinsic evidence may not be admitted because the meaning of a will is clear on its face and free from patent ambiguity. "In order to determine initially whether the terms of any written instrument are clear, definite and free from ambiguity the court must examine the instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used. *188 Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous....
".... .... ...
"[A] court cannot determine whether the terms of the will are clear and definite in the first place until it considers the circumstances under which the will was made so that the judge may be placed in the position of the testator whose language he is interpreting. (Cf. Code Civ. Proc., § 1860.) Failure to enter upon such an inquiry is failure to recognize that the `ordinary standard or "plain meaning," is simply the meaning of the people who did not write the document.'" (Estate of Russell, 69 Cal.2d 200, 208-209, 210-211 [70 Cal. Rptr. 561, 444 P.2d 353].)
Such evidence is always admissible if it discovers a latent ambiguity and is then admissible to the extent it tends to resolve such latent ambiguity. (9) "[E]xtrinsic evidence is admissible `to explain any ambiguity arising on the face of a will, or to resolve a latent ambiguity which does not so appear.'...
".... .... ...
(10) "... On the other hand an ambiguity is said to exist when, in the light of the circumstances surrounding the execution of an instrument, `the written language is fairly susceptible of two or more constructions.' ...
"[E]xtrinsic evidence of the circumstances under which a will is made (except evidence expressly excluded by statute) may be considered by the court in ascertaining what the testator meant by the words used in the will. If in the light of such extrinsic evidence, the provisions of the will are reasonably susceptible of two or more meanings claimed to have been intended by the testator, `an uncertainty arises upon the face of a will' (§ 105) and extrinsic evidence relevant to prove any of such meanings is admissible (see § 106), subject to the restrictions imposed by statute (§ 105). If, on the other hand, in the light of such extrinsic evidence, the provisions of the will are not reasonably susceptible of two or more meanings, there is no uncertainty arising upon the face of the will [citations] and any proffered evidence attempting to show an intention different from that expressed by the words therein, giving them the only meaning to which they are reasonably susceptible, is inadmissible." (Estate of Russell, 69 Cal.2d 200, 206, 211, 212 [70 Cal. Rptr. 561, 444 P.2d 353].)
J.K. Stickney, an attorney, testified he prepared and witnessed the Coxes' wills and is the executor of their estates. Fred and Frances were long-time friends of his and on February 28, 1953, they asked him to *189 prepare their wills quickly since they were flying to Europe the next day. The documents complied with their testamentary wishes but he informed them these were merely "stopgap" wills and they should give consideration to having more complete wills drawn upon their return.
The evidence admitted over objection was briefly as follows: Oliver B. James, trust officer of Bank, discussed the provisions of the trust with Fred and Frances for three or four months prior to its execution. Mr. and Mrs. Cox had given him the information to put into the trust; he had never discussed with either of them the subject of the execution of the power of appointment by a prior will. After the document was signed, four parcels of real property were conveyed to Bank as trustee. Two of these were later sold. Bank has made payments to Patricia D. Snyder and Brett Duncan, her son, through the provisions of an assignment whereby Kenneth Duncan assigned a portion of his interest in the trust as payment for child support owed by Kenneth to Patricia. James further testified Fred managed the trust property and paid the trustee fees until his death and thereafter this was done by Frances. Bank, during Fred's lifetime, made a loan to Fred and Frances, secured by an assignment of their rights under the trust, which was agreed to be irrevocable until the loan should be paid. It had not been paid in full.
Patricia testified she was the former wife of Kenneth and the mother of Brett; after Patricia and Kenneth were divorced, Patricia often visited with Fred and Frances; Fred and Frances were greatly distressed that Kenneth paid Patricia so little support money; Fred and Frances visited Patricia from time to time and Brett visited them; in 1960 Patricia saw Frances on four occasions; Patricia left California in 1965; thereafter she and Frances corresponded with regularity; from time to time Frances sent Patricia money. Kenneth drank a great deal, was always without money, talked of "kiting" checks and had paid Patricia for only about one month on his child-support obligation; his relationship with Frances had become very strained.
Patricia testified also to the ages of the children of Fred's Hilker nephews.
A part of a letter written to Patricia in 1966 was read into the record. The letter itself was offered in evidence and excluded.

EXTRINSIC EVIDENCE APPLICABLE TO WILLS
It is only the "circumstances under which the will was made" that may be taken into consideration. (Prob. Code, § 105; Estate of Russell, 69 Cal.2d 200, 212 [70 Cal. Rptr. 561, 444 P.2d 353]; Childs v. Gross, 41 *190 Cal. App.2d 680 [107 P.2d 424].) Determination of the intent the testators had in making their respective wills could not be aided by testimony of subsequent events. (Estate of Kaufman, 25 Cal.2d 854, 861 [155 P.2d 831]; Estate of Bourn, 25 Cal. App.2d 590 [78 P.2d 193].)
The only evidence as to any circumstances existing as to the time the wills were made was the testimony of Mr. Stickney, and only that may be considered for the purpose of determining whether in its light "the provisions of the will are reasonably susceptible of two or more meanings." (Estate of Russell, supra, 69 Cal.2d 200, 212.)
The testimony of Mr. Stickney does not disclose ambiguity in the identification of the intended beneficiaries or in the description of property; nor does it tend to show that the makers of the wills used the words found therein in any other than the usual legal meaning thereof.
The evidence considered by the court with regard to the intentions of the testators, other than oral testimony, were the provisions of the trust instrument that set up plans for disposition of the trust estate if one or both of the powers should not be exercised.
The alternative-dispositive provisions of the trust were not testamentary in nature; they may not be accorded that status for the purpose of interpreting the will of one of the trustors as though the two instruments became integrated or for the purpose of injecting ambiguity or uncertainty into the wills made eight years previously, or for the purpose of nullifying or setting aside the provisions of the will.
The trust document was not a writing in existence when the wills were made; the provisions of the trust instrument cannot be read together with the wills as though incorporated therein.
(11) The requisites of a valid incorporation by reference are that the incorporated document must be clearly identified and in existence at the time the will makes reference to it. (Estate of Wunderle, 30 Cal.2d 274, 281 [181 P.2d 874].) (12) "Any conclusion as to the testator's intention must be considered in the light of his knowledge at the time he executed the will." (Estate of Kaufman, 25 Cal.2d 854, 861 [155 P.2d 831].) (13) "[C]onditions or circumstances arising subsequent to the execution of a will and which were probably not foreseen or anticipated at the time cannot alter the construction of the language of the will, any more than can changed circumstances of a beneficiary justify a court in modifying testamentary provisions to meet such changed circumstances." (Estate of Bourn, 25 Cal. App.2d 590, 597 [78 P.2d 193].)
(14) Even where a will is in some respects uncertain on its face, resort *191 may not be had to an undated holograph of the testator to ascertain his intention as expressed in a validly executed will, because the holograph is not a circumstance under which the will was made. (Estate of Whitney, 162 Cal. App.2d 860, 864 [329 P.2d 104].)
(15) A validly executed last will and testament is not voided by a subsequent document not executed with the necessary statutory formalities. (Estate of Wunderle, supra, 30 Cal.2d 274, 284.)
With whatever intention the wills had been made before the trust was created, that intention was not changed by the creation of the trust.
It is true that neither will was made with knowledge of the existence of any power of appointment to be exercised by will. But if the language of either will was sufficient to exercise a power of appointment created under a trust that might, for example, have provided for a disposition to the heirs of the donee, in the absence of an exercise of the power, then it must be considered to have been sufficient to exercise the power in the case at bar; and its effectiveness to do so could not be lessened by the language of a non-testamentary document executed thereafter.
In Estate of Crane, 6 Cal.2d 218, 221 [57 P.2d 476, 104 A.L.R. 1101], the court said: "[A]lthough the will in which the legacy is contained had been executed prior to the date of the contract, the testator lived more than two years thereafter. And a will speaks from and as of the date of the testator's death. If the testator had not executed this will until after the date of the property settlement agreement, it would not be reasonable to say that he was without right to make such subsequent will and thereby give additional property to his wife. But in substance and effect he did the same thing by leaving his will unchanged after the date of said contract."
(16) Where a will is drawn by an experienced and competent lawyer, it is presumed that legal terms embodied in the will are used in their legal sense. (Estate of Carter, supra, 47 Cal.2d 200, 205.)
If no ambiguity has been shown, the following rules apply:
(17) Where the language of a will is clear and unambiguous it must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained therefrom. (Estate of Carter, supra, 47 Cal.2d 200, 203.) A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, including property embraced in a power to devise. (Estate of Carter, supra, 47 Cal.2d 200, 204; Prob. Code, § 125.)
*192 (18) It is not necessary that the will refer to a power of appointment in order to exercise such power, in the absence of any such requirement in the instrument creating the power (Estate of Carter, supra, 47 Cal.2d 200).
In its ordinary legal meaning the language of each of the wills denoted an intent to pass all the real and personal property of the maker.
The competent extrinsic evidence has not shown that either testator could have had a different meaning for the language used.
Ambiguity could only be as to whether the will of either maker was reasonably susceptible of meaning the maker did not intend to dispose of all his real and personal property. No such ambiguity has been shown.
In that situation the effect declared by statute should be given to the clear provisions of the will.
If by his or her will either testator intended to dispose of all his real and personal property, the will passed property embraced in a power to devise or bequeath which he was entitled to exercise at the time of his death. (Estate of Carter, supra, 47 Cal.2d 200, 204; California Trust Co. v. Ott, supra, 59 Cal. App.2d 715, 717; Childs v. Gross, supra, 41 Cal. App.2d 680, 687; Prob. Code, § 125.)
Section 125, Probate Code, whose meaning and effect are argued by both sides is as follows: "A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, including property embraced in a power to devise."[10]
*193 Section 125, Probate Code, applies to bequests of personal property as well as to devises. (Childs v. Gross, supra, 41 Cal. App.2d 680.)
Application of the section cannot ignore that it is in chapter 6 entitled "Effect of Certain Provisions," a chapter distinct from the preceding one entitled "Interpretation of Wills."
Section 121, which also is in chapter 6, is as follows: "Any estate, right, or interest in lands acquired by the testator after the making of his will, passes thereby and in like manner as if title thereto was vested in him at the time of making the will, unless the contrary manifestly appears by the will to have been the intention of the testator."
The courts of New York have considered the effect of a statute somewhat akin in meaning to section 125, Probate Code. The New York statute is as follows: "`Real property embraced in a power to devise passes by a will purporting to convey all the real property of the testator, unless the intent that the will is not to operate as an execution of the power, appears, either expressly or by necessary implication.'" (In re Smith's Will, 279 App.Div. 140 [108 N.Y.S.2d 290, 294].)
The California statutes, like the New York statutes, have abrogated the common law rule still adhered to in some states and expressed in section 343 of the Restatement of the Law of Property as follows: "(1) When the donee by his will makes a gift of the residue of his estate or otherwise manifests an intent to pass all his property, this of itself does not manifest an intent to exercise any power.
"(2) To whatever extent pecuniary gifts, a residuary gift or both, in the donee's will, read with reference to the property which he owned and other circumstances existing at the time of formulation of the will, indicate that the donee understood that he was disposing of property covered by a power, to that extent such gifts are appointments."
*194 Generally, in those states that follow the common law rule, a will making a bequest of all real property does not dispose of after-acquired property.
Respondents cite Childs v. Gross, supra, 41 Cal. App.2d 680, as requiring evidence to show that the testator, in making a will, had a specific intent to exercise a power of appointment.
The court in Childs v. Gross, supra, considered the question of intent only if section 125, Probate Code, did not apply. It had already held that the section did apply. On the question of intent the only evidence received was as to circumstances existing at the time the will was made, the court finding that elaborate provisions made in the will for the support of a wife and child by a man who was insolvent and had nothing to dispose of, but over which he had a power of appointment created by another and of which he knew, must have intended to dispose of it. The same kind of reasoning was applied in Reed v. Hollister, supra, 44 Cal. App. 533.
(19) A will takes effect as of the date of death. (Estate of Newton, 35 Cal.2d 830, 831 [221 P.2d 952, 19 A.L.R.2d 1399]; Estate of Crane, supra, 6 Cal.2d 218; Estate of Puett, 1 Cal.2d 131 [33 P.2d 825]; Estate of Page, 181 Cal. 537 [185 P. 383]; Estate of Brickell, 4 Cal. App.2d 54 [40 P.2d 579]; Estate of Fuller, 135 Cal. App. 781 [28 P.2d 399]; Nichols v. Emery, 109 Cal. 323, 329 [41 P. 1089].)
A power of appointment exercised by will is exercised as of the time of death of the testator (Estate of Newton, supra, 35 Cal.2d 830, 831) so that a power may be validly exercised by a will made before the creation of the power in the absence of a specific requirement to the contrary in the instrument creating the power (California Trust Co. v. Ott, supra, 59 Cal. App.2d 715).
By virtue of the New York statute quoted above, and a similar one referring to personal property, the New York courts have held powers to have been exercised by wills made before the powers were created. (In re Smith's Will, 279 App.Div. 140 [108 N.Y.S.2d 290] County Trust Co. v. Quencer, 183 Misc. 922 [54 N.Y.S.2d 29].)
New York law is in accord with the rule found in section 344, Restatement of the Law of Property: "A power existing at the donee's death but created after the execution of his will is effectively exercised thereby if the will is an otherwise effective appointment, unless
"(a) the donor manifests an intent that the power may not be exercised by a will previously executed, or
"(b) the donee manifests an intent not to exercise a power subsequently acquired." "In England and in some states in this country it is provided *195 by statute that a general devise or general bequest shall be construed to include any real or personal property which the testator may have power to appoint in any manner he may think proper and shall operate as an execution of such power unless a contrary intention appears by the will, and it is also provided by statute that every will shall be construed, with reference to the real and personal property comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention appears by the will. In jurisdictions having both of such statutes, general powers are executed by anterior wills unless a contrary intention appears by the will." (41 Am. Jur., § 43, p. 835.)
No inference may reasonably be drawn that the execution of a non-testamentary document years after a will was made evidences an intention of the testator when he made his will to exclude from its operation a class of property declared by statute to pass by the will under the appropriate language therefor, because the non-testamentary document provides a plan for the devolution of said property to be effective only if the property be not disposed of by the will.
The intent with which the subsequent power is reserved does not define the scope of the operation of the will or determine whether it will exercise the power, if such intent does not so limit the power as to make it non-exercisable by the prior will,  rather, the question is one of intent under the will. (41 Am. Jur., § 41, pp. 834-835.)
The judgment is based in part upon a finding only Controller has asserted the applicability of section 125, Probate Code. The finding was not based upon evidence but upon the fact no person interested other than respondents had appeared in the proceedings. That fact has no value as support to the judgment for the reason that the court did not have jurisdiction of both the subject matter and of all interested persons, except for the purpose of determining tax, insofar as the proceeding was to determine whether the powers were exercised. (20) "`[A]n appellate court is not bound by a construction of a document based solely upon the terms of the written instrument without the aid of extrinsic evidence, where there is no conflict in the evidence, or a determination has been made upon incompetent evidence....'" (Estate of Russell, 69 Cal.2d 200, 213 [70 Cal. Rptr. 561, 444 P.2d 353].)
(21) Nothing in the language of the wills viewed in the light of the rules that we have quoted permits the interpretation either testator intended to do other than have the will pass all the maker's real and personal property. The findings that neither testator intended by his will admitted to probate to exercise the power reserved to him are unsupported and erroneous.
*196 (22a) Next to be considered is whether the trust instrument itself may be interpreted to mean that either power was to be exercised only by a will executed thereafter.
The same principles of interpretation govern with regard to wills as to other instruments in writing. (Estate of Russell, supra, 69 Cal.2d 200, 212.)
None of Patricia's testimony was directed to the time when the trust was created or to the time the wills were made. It is not of a character to create or to resolve uncertainty, if there were any, in any of the writings. Clearly, it was inadmissible except as to the blood and family relationships and ages, and as to the assignment from Kenneth to Patricia of an interest in the estates.
There is no evidence as to when Kenneth's filial imperfections became apparent in relation to the time of the making of the wills or the trust.
Some of the testimony was of a character to show why Frances might have made the alternative-dispositive provisions of the trust. However, if it clearly appears from the language of the document what the intention of the decedent was, evidence to show it was natural that she so intended is superfluous.
On the other hand, there is no evidence as to any reason for Fred to have preferred his unnamed grand-nephews and nieces over his nephews.
The evidence of the trust officer that might be considered as bearing on the meaning of the trust instrument is not enlightening. The language of the alternative-dispositive provisions of the trust are clear; there is no doubt as to the intention and meaning of the language used. Respondents do not suggest that those alternative-dispositive provisions are ambiguous.
The court did not find to be ambiguous or uncertain the language of the paragraph reserving the powers. But unless it is ambiguous as to whether the powers could be exercised only by a subsequently executed will, the court's finding neither trustor intended the power reserved to him should be exercised by the existing will would be a misreading of the otherwise clear language providing for exercise of the power.
The trust officer's testimony does not contain anything to show the sense in which the words "Such power of appointment shall be exercisable by will" were used by either testator. His testimony was that the subject was not discussed.
Unless, therefore, an ambiguity appears on the face of the instrument, the language of that paragraph would have its ordinary legal meaning. After discussing that meaning, we shall consider whether another meaning should be given it when considered with the other parts of the instrument, *197 since a part of an instrument in writing is not to be interpreted in isolation, but is to be interpreted from the entirety of the writing. (Brock v. Hall, 33 Cal.2d 885 [206 P.2d 360, 11 A.L.R.2d 672].) (23, 24) "Words used in an instrument disposing of one's property `are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected, and that other can be ascertained.' [Citation.] Where an instrument has been drawn by one skilled in the law, the presence of legal technical terms is an indication that the words are to be accepted in accordance with legal definition." (Maud v. Catherwood, 67 Cal. App.2d 636, 641 (155 P.2d 111].)
(22b) The ordinary meaning of the language of the paragraph creating the powers must be determined in the light of the facts that each of the settlors of the trust knew of the existence of his or her will and of its provisions, and that they were acting with legal advice.
When the trust was created, California Trust Co. v. Ott, supra, 59 Cal. App.2d 715, and Estate of Carter, supra, 47 Cal.2d 200, had been decided. They had established that a power of appointment made exercisable by will may be exercised by a last will made before the power was created, and by a will that makes no mention of the exercise of the power.
The powers created here presumably were created with that law in contemplation. (Moxley v. Title Ins. & Trust Co., 27 Cal.2d 457, 464-465 [165 P.2d 15, 163 A.L.R. 838]; Estate of Heard, 107 Cal. App.2d 225, 232 [236 P.2d 810, 27 A.L.R.2d 1313]; Blair v. Williams, 86 Cal. App. 676, 681 [261 P. 539].) The trust was of professional draftsmanship, approved by the attorney for the trustors.
The trust reserved a separate power of appointment over a different part of the trust assets to each of the two trustors. Either might be exercised without the exercise of the other.
The powers reserved were general. Nothing suggests they might be exercised only in favor of the persons who would take if they were not exercised.
Neither trustor engaged not to exercise the power of appointment reserved to him or her; either, upon the prior death of the other, might alter the disposition of his or her share in the absence of an exercise of the power; and Fred in that case might alter the disposition of both shares.
The use of the word "shall" in the phrase "shall be exercised" was not given specific interpreation by the trial court. Respondents argue its meaning is that the power should be exercised by a will made thereafter. It is properly to be considered as declaring the sole manner of exercise of the power to be by will, a meaning strengthened by the use of the word "may" in the following sentence referring to who might be donee of the power.
*198 Even if the "shall" is considered to speak of the future, it is perfectly in accordance with the law then existing that a power exercised by will is exercised at the date of death of the donee. (Estate of Newton, supra, 35 Cal.2d 830.)
The trial court did not find the language of the trust to be ambiguous as to whether the powers were exercisable only by wills subsequently executed. The language reserving the powers on its face is not ambiguous in that respect in view of existing law.
Even if there is no statute such as section 125, Probate Code, where a grantor reserves to himself a general power to appoint property by will, the courts frequently, and more often than in other nonstatutory cases, arrive at the conclusion that the power is exercised by the prior will of the grantor. (41 Am. Jur. § 41 [Powers], p. 834.)
(25) Despite the apparent freedom from ambiguity of the paragraph reserving the powers and providing for the manner of exercising them, do the following portions of the trust instrument that create alternative methods of disposition should either or both powers not be exercised make the precedent language ambiguous, or do they so far overshadow and dominate the paragraph providing for the powers and their exercise as to render the latter nugatory?
We answer those questions in the negative.
The portions of the trust agreement that provide for a disposition of the trust assets are made conditional upon non-exercise of one or both of the powers reserved in the earlier part of the trust document. The condition upon which they are premised is not that the power or powers be not exercised by a will or wills made thereafter, but is, "should any settlor fail to appoint his or her share of the trust estate."
The alternative disposition of those separate shares depends wholly upon the non-exercise of either or both powers.
Those alternative dispositions are not testamentary in character; they do not constitute a mutual and conjoint will of the settlors. They may not be treated as a testamentary disposition as though they were in a will later in date than the wills of 1953 so as to invalidate the latter to the extent they might be in conflict with the trust instrument's dispositions. Nor can those provisions be considered as themselves an exercise of the powers.
The only express mention of the manner in which the powers were to be exercised is in the paragraph creating them. Their exercise is mentioned thereafter only in the following language: "should any settlor fail to appoint *199 his or her share of the trust estate," followed by the provisions that were to become effective under such conditions.
The former paragraph is specific as to the manner of exercise. If the following language including the alternative-dispositive provisions may be considered as subject to the interpretation it provides for the manner of exercise of the powers, it must be considered subordinate to rather than paramount over the specific provisions on the subject. (Civ. Code, § 3534; Code Civ., Proc. § 1859; Estate of Greenleaf, 101 Cal. App.2d 658, 665 [225 P.2d 945]; Scudder v. Perce, 159 Cal. 429 [114 P. 571].)
The paragraph creating the powers and providing for the manner of their exercise precedes the provisions that are to become effective were the powers not exercised. If those later provisions are interpreted in a manner that makes them repugnant to the language of the earlier provision in its usual and accepted legal meaning, that meaning should be accepted. (26) The general rule is that where two clauses of a contract cannot be reconciled, the first shall be received and the latter rejected. (Burns v. Peters, 5 Cal.2d 619, 623 [55 P.2d 1182].)
What is meant by a will in the language creating the power should, therefore, be determined from that language, rather than from the language providing for distribution of the trust assets in the event of the non-exercise of the power, unless there is something in the very nature of those alternative-dispositive and dependent conditions that permit an interpretation of the trust instrument as a whole that modifies or denies to the trustors the rights they reserved to themselves respectively in its earlier language, and upon the non-exercise of which the subsequent provisions were to become operative.
(27) A trust agreement should not be interpreted so as to deny or diminish a right reserved to himself by a trustor because the exercise of the right would destroy or lessen the benefits to a gratuitous beneficiary, unless such is the clear meaning of the trust document. (See Lawrence v. Wilson, 44 Cal. App. 690, 693 [187 P. 30].)
(22c) The instrument expressly provides for the powers and the manner of their exercise. If it may be said the provisions for an alternative disposition of the trust assets in the event of non-exercise of the power manifest an intention that the power be not exercised by an existing will, it may be said with equal logic that they manifest an intention that the power not be exercised at all.
The argument might then follow that the intent not to exercise the power by any will is shown by the fact neither testator made a later will.
*200 No reasonable inference may be drawn that in reserving a power of appointment in a trust instrument the trustor intended that it should not be exercised, or to draw an inference that the power was in fact not exercised, because its exercise would make inoperative an alternative disposition of the appointive property that would be effective only if the power were not exercised.
There is no uncertainty as to the conditions under which the alternative-dispositive provisions were to come into play.
The structure of the trust instrument lends no support to a finding the settlors intended the clear language to mean those alternative provisions should become effective unless the powers were exercised by a will subsequently executed; or a finding the language reserving the power, which was silent on the subject, meant and was intended to mean the powers could be exercised only by a will subsequently made or which expressly mentioned the exercise of a power.
Had the settlors desired otherwise, it would have been a simple matter to introduce the brief language by which such an intent could have been expressed.
We have made it clear that our decision is not conclusive as among the persons whose rights to the trust assets are dependent upon the exercise or non-exercise of the powers.
The judgment determining interest in the estates is reversed and the findings of fact in support of that judgment are set aside insofar as they purport to find and determine that the power reserved to each of the testators was not and was not intended to be exercised by the will admitted to probate, and insofar as they purport to find and determine that each testator by his or her will did not intend to and did not exercise the power of appointment reserved to him or her. The order fixing inheritance tax in each estate is reversed with directions to enter an order in each estate fixing tax upon the basis the powers were exercised.
Coughlin, Acting P.J., and Ault, J., concurred.
A petition for a rehearing was denied June 11, 1970, and the petition of the objectors and respondents for a hearing by the Supreme Court was denied July 29, 1970. McComb, J., was of the opinion that the petition should be granted.
NOTES
[1] She had obtained an interlocutory decree in 1960.
[1a] Total value of trust assests exceeded $400,000.
[1b] Kenneth, however, was permitted to make an assignment of $120 per month of income.
[1c] Page 10 of the copy of the trust attached to the petition to determine interest in each estate, found in the clerk's transcript, has a faintly discernible name on a line over the words "Attorney for Trustors" and under the word "Approved." Photostatic copies attached to the original petitions, of which the trial court took judicial notice, show in that position the legible name "Chas. Provence." The photostatic copy received in evidence has no discernible print or writing in that position. An original, or executed duplicate, of the trust was not offered.

In his oral summing up, the trial judge said, "There is a blank line for the signature of the attorneys for the settlors, indicating they had no independent legal counsel relative to the creation of the trust."
There was no finding on the subject.
[2] The petition was amended later, a matter touched upon hereinafter.
[3] Patricia claimed to appear in her own behalf as an assignee.

A writ of attachment in an action in the San Diego Superior Court brought by Patricia against Kenneth in the amount of $13,542.15, of which $10,920 bore interest from July 2, 1967, and was served on Kenneth's interest in the estate on July 24, 1967.
On July 24, 1967, Kenneth made a written assignment to Patricia of the sum of $2,500 that might come to him from the estate of Frances, and an assignment of a like amount from the estate of Fred, which was said to be for the past support of Brett. The assignments were filed on August 9, 1967.
[4] The placing in the Probate Code of article 2 of chapter 19 of division 3 (§ 1137 et seq.) apparently places jurisdiction over certain inter vivos trusts in the superior court sitting in probate; that article takes effect only on November 1, 1970, is limited in its application, and is in addition to existing procedures.
[5] In Wells Fargo Bk. etc. Co. v. Superior Court, 32 Cal.2d 1 [193 P.2d 721], the probate court was upheld in its refusal to attempt to exercise jurisdiction of the property of an inter vivos trust, although the property in question, an undivided interest, had come to the trustee under the will of a decedent which had also created a testamentary trust with the same trustee over the remaining undivided interest over which the probate court continued to exercise jurisdiction.
[6] In that action the plaintiff had sought to have it determined in advance whether he would subject himself to a disinheritance clause of the will if he took a certain action.
[7] In Morffew v. S.F. & S.R.R. Co., 107 Cal. 587 [40 P. 810], prior to the adoption of Probate Code, section 1120, or its predecessor, Code of Civil Procedure, section 1699 in 1889, it was held that whether a power of sale created by a testamentary trust had been exercised after distribution to the trustee was for the court of equity rather than the probate court to pass upon.
[8] The orders made in Estate of Carter, 47 Cal.2d 200 [302 P.2d 301], were upon petitions for instructions.
[9] Estate of Bowditch, 189 Cal. 377 [208 P. 282, 23 A.L.R. 735], has been overruled by Estate of Newton, 35 Cal.2d 830 [221 P.2d 952, 19 A.L.R.2d 1399], as to the state's right to tax the exercise of a power of appointment over intangibles held by a foreign and non-resident trustee.
[10] The briefs contain some discussion of the language of sections 1386.1, 1386.2 and 1386.3, Civil Code, as such language throws light on existing law. The sections were adopted in 1969 to be operative July 1, 1970.

Section 1386.1 reads: "(a) The exercise of a power of appointment requires a manifestation of the donee's intent to exercise the power.
"(b) Such a manifestation exists where:
"(1) The donee declares, in substance, that he exercises the specific power or all powers that he has.
"(2) The donee purports to transfer an interest in the appointive property which he would have no power to transfer except by virtue of the power.
"(3) The donee makes a disposition which, when considered with reference to the property he owned and the circumstances existing at the time of the disposition, manifests his understanding that he was disposing of the appointive property.
"(c) The listing in subdivision (b) is illustrative, not exclusive."
Section 1386.2 reads: "A general power of appointment exercisable at the death of the donee is exercised by a residuary clause or other general language in the donee's will purporting to dispose of the property of the kind covered by the power unless:
"(a) The creating instrument requires that the donee make a specific reference to the power or to the instrument that created the power; or
"(b) The donee manifests an intent, either expressly or by necessary inference, not to so exercise the power."
Section 1386.3 reads: "If a power of appointment existing at the donee's death, but created after the execution of his will, is exercised by the will, the appointment is effective unless:
"(a) The creating instrument manifests an intent that the power may not be exercised by a will previously executed; or
"(b) The will manifests an intent not to exercise a power subsequently acquired."
At the same time Probate Code, section 125 was amended to exclude from its operation powers of appointment, except as provided in the new sections of the Civil Code.