NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 2 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JUST GOODS, INC., a Delaware corporation,<br><br>　　　Plaintiff-counter-<br>　　　defendant-Appellee,<br><br>　v.<br><br>EAT JUST, INC., FKA Hampton Creek, Inc.; JOSHUA TETRICK, an Individual,<br><br>　　　Defendants-counter-<br>　　　claimants-Appellants. | Nos.　20-17033 & 20-15809<br><br>D.C. Nos.　　3:18-cv-02198-WHO<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted October 22, 2021
San Francisco, California

Before: WATFORD and HURWITZ, Circuit Judges, and BAKER,** International Trade Judge. Partial Concurrence and Partial Dissent by Judge BAKER.

Eat Just, Inc. ("EJ") entered into a contract (the "Term Sheet") with Just

---

\*　　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*　　The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

Goods, Inc. regarding use of the trade name JUST. The district court entered an amended judgment on March 30, 2020 (the "March 30 Order") interpreting the Term Sheet, and entered an order on September 11, 2020 holding EJ in contempt of the March 30 Order. These consolidated appeals challenge both the March 30 Order and the contempt order. We affirm both.[1]

1.      The district court faithfully read the Term Sheet's text in determining that EJ was prohibited from reposting content referring to itself as JUST. The court correctly held that the Term Sheet allowed EJ to use the term in only three specified instances: "(1) in the Frame Logo, (2) as part of the names/phrases 'Eat Just' and 'Make it Just,' and (3) in text in conjunction with a generic product name (e.g., Just Egg)." Paragraph 1(c) only authorizes EJ to use JUST "in text" in certain specified instances, and other sections of the Term Sheet underscore that other in text uses are not authorized. For example, Paragraph 2 reads: "For the sake of clarity, [EJ] may refer in text to its brand as JUST, *so long as* JUST is used in connection with [EJ's] generic product name (e.g., 'Just Mayo[]' . . . )." (Emphasis added). The Term Sheet contains numerous other restrictions regarding EJ's use of JUST in Paragraphs 3, 5, 9, 12, and 15. *See Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 872 (9th Cir. 1979) ("We seek to interpret the contract in a manner that makes the

---

[1]    Just Goods, Inc.'s unopposed motion in No. 20-15809 to supplement the record on appeal is **DENIED**. **Dkt. 38.**

contract internally consistent.").[2]  Because the Term Sheet was intended to settle a trademark dispute between the parties, the district court correctly concluded it would be an "end run" around the settlement to allow EJ freely to repost content referring to its own brand as JUST.

2.    The district court also correctly held that the Term Sheet prohibits EJ from capitalizing the term JUST in the phrase "Make it JUST" and the corporate name "Eat JUST."  Capitalization of the term JUST varies throughout the Term Sheet, and the district court appropriately found that the "absence of capitalization" in particular provisions at issue was "intentional."  The court also correctly recognized that allowing EJ to capitalize JUST in its corporate name, or in the marketing phrases "Make it JUST" and "#MakeItJUST," would be a "backdoor" to violation of the Term Sheet.  Where, as here, the district court presided over the

---

[2]    The partial dissent mistakenly assumes that our interpretation of the Term Sheet rests on the *ejusdem generis* canon.  *See* Dissent at 2–9.  Our interpretation rests instead on the unambiguous text of the Term Sheet, which makes plain throughout that only three defined uses of the Mark were permitted.  *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

And, even if California's so-called "tiebreaker rule" were relevant to our interpretation of the Term Sheet, *see* Dissent at 11–12, the result would not change.  The contract begins in Paragraph 1 by stating that, "[e]xcept for internal use," EJ will be "restrict[ed]" in its "use of JUST."  In the context of a settlement of an infringement suit, interpreting the Term Sheet to allow permitting *any* use of the Mark "in text" leads to an illogical reading of the agreement.  *See ASP Props. Grp., LP v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1269 (2005); Cal. Civ. Code § 1652.

litigation giving rise to the settlement agreement, its interpretation of the agreement should be treated with "due respect" given the court's "superior perspective." *Congregation ETZ Chaim v. City of Los Angeles*, 371 F.3d 1122, 1124 (9th Cir. 2004).

3. The district court's interpretation of the Term Sheet does not violate the First Amendment, as it only restricts the commercial use of a source identifier. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) ("Limited to this core purpose—avoiding confusion in the marketplace—a trademark owner's property rights play well with the First Amendment.").

4. The district court did not abuse its discretion by holding EJ in contempt of the March 30 Order. To do so, a court must find "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (cleaned up). The order alleged to have been violated must "state in specific terms the acts that it required or prohibited." *Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) (cleaned up). After specifying the three permitted uses of the term JUST, the March 30 Order makes plain that "[o]ther uses of the term [JUST] violate the parties' agreement." EJ's reposting of third-party content referring to its brand as JUST was thus an impermissible "use" under the March 30 Order. These violations were not based on a "good faith" interpretation

4

of the March 30 Order or a "reasonable effort . . . to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

**AFFIRMED.**

FILED

MAR 2 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BAKER, Judge, concurring in part and dissenting in part:

I join Part 3 of the memorandum disposition, and I concur in my colleagues'

conclusion that Eat Just, Inc. (EJ) violated the settlement Term Sheet between it and

Just Goods, Inc. (JG), but only as to EJ's use of "JUST" in nine identified stand-

alone, attention-grabbing settings. I respectfully dissent from my colleagues'

determinations (i) that EJ otherwise violated the Term Sheet by using the term

"JUST" in prose and capitalizing that word in certain uses and (ii) that EJ was in

civil contempt for violating the district court's order enforcing the Term Sheet.

## 1.

**a.** The crux of my disagreement with my colleagues involves Paragraph 1 of

the Term Sheet:

> 1. Except for internal use by Defendants, Defendants will *restrict their use of JUST* to: (a) the "frame" logo (an example of which appears below), in which the letters "JU" appear stacked above the letters "ST", and the preceding elements are enclosed in a rectangular frame (hereinafter, the "JUST Frame Logo"); (b) MAKE IT JUST, as provided below in Paragraph 3; or (c) *in text (for example, in advertising or marketing copy so long as the JUST Frame Logo is present or in connection with generic names for their products in advertising or marketing copy, in descriptions, in governmental or other corporate filings, etc.).* For the sake of clarity, the JUST Frame Logo may include a generic product name (e.g., "Egg") or not.



(Emphasis added.)

Paragraph 1(c) permits EJ to use "JUST" . . . "in text," and then enumerates examples of such permitted use. The first interpretative question is whether subparagraph (c) "only authorizes EJ to use JUST 'in text' in certain specified instances," as my colleagues contend, *ante* at 2, or whether, as EJ contends, "[t]he signal 'for example' is an expander and connotes that the items that follow are illustrative and not exhaustive."

In most jurisdictions, EJ's argument would carry the day. Under the *ejusdem generis* canon of construction, "[w]here general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). That canon "has traditionally required the broad catchall language to *follow* the list of specifics," *id*. at 202 (emphasis in original), and "[t]he vast majority of cases dealing with the doctrine—and all the time-honored cases—follow the species-genus pattern." *Id*. at 204. "So the ejusdem generis application is properly limited to its traditional application: a series of specifics followed by a general." *Id*. at 205. Applied here, that limitation means that the general term "in text" in Paragraph 1(c) of the Term Sheet is *not* confined to things of the same general kind or class specifically mentioned as examples—much less those examples—because those examples *follow* the general words "in text."

But in this context, California is different. It applies the canon when specifically enumerated examples *follow* general words as well as vice versa: "Under the principle of *ejusdem generis* . . . where specific words follow general words in a contract, 'the general words are construed to embrace only things similar in nature to those enumerated by the specific words.' " *EDebitPay*, 695 F.3d at 944 (quoting *Nygard, Inc. v. Uusi–Kerttula*, 159 Cal. App. 4th 1027, 72 Cal.Rptr.3d 210, 223 (2008)). Applying the two-way California variant of the canon here means that EJ's use of "in text" in Paragraph 1(c) *is* at least confined to things of the same general kind or class specifically mentioned as examples, if not those examples themselves as suggested by my colleagues (more on that below).

But California law is quirky in another material respect. In the Golden State, "[w]hen statutory language is . . . clear and unambiguous there is no need for construction." *Solberg v. Super. Ct.*, 561 P.2d 1148, 1158 (Cal. 1977). This means that "[w]here statutory language is clear, a court need not and should not rely upon artificial canons of construction." *Rojo v. Kliger*, 801 P.2d 373, 381 (Cal. 1990).[1]

---

[1] *But see* Scalia & Garner, *above*, at 53 (The very act of pronouncing statutory, regulatory, or contractual language to be unambiguous necessarily "involves interpretation, even if the interpreter finds the task straightforward," as "[i]nterpretation or construction is 'the ascertainment of the thought or meaning of the author of, or of the parties to, a legal document, as expressed therein, according to the rules of language and subject to the rules of law.' " (quoting H.T. Tiffany, Interpretation and Construction, 17 *American and English Encyclopaedia of Law* 1, 2 (Garland & McGehee eds., 2d ed. 1900)); *see also* Ronald Dworkin, *Law's Empire*

California courts (and federal courts applying California law) carry over this rule to the contracts, meaning that by characterizing language as unambiguous, courts can foreclose application of canons and other ordinary tools of construction that might lead to a different reading. *See, e.g., EDebitPay*, 695 F.3d at 944 (summarily pronouncing contract language as "unambiguous," and on that basis declining to apply the *ejusdem generis* canon).[2]

So that brings us back full circle to EJ's argument. EJ argues that, as in *EDebitPay*, the California variant of the *ejusdem generis* canon does not apply here, because Paragraph 1(c) of the Term Sheet is unambiguous. As I can't see a material difference between the language that the *EDebitPay* court pronounced unambiguous and Paragraph (1)(c), *see EDebitPay*, 695 F.3d at 943–44 (" 'E.g.' signifies that the subsequent examples are illustrative and not exhaustive. Defendants' interpretation

---

17 (1986) ("[J]udges before whom a statute is laid [always] need to construct the 'real' statute . . . . [J]udges need something like a theory of legislation to do this for [all] statutes. . . . [This] is also necessary [even] when the[ ] words are, from a linguistic point of view, impeccable.").

[2] *Cf. Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (in the context of *Auer* deference, observing that "the possibility of deference can arise only if a regulation is genuinely ambiguous. And when we use that term, we mean it—genuinely ambiguous, *even after a court has resorted to all the standard tools of interpretation*.") (emphasis added); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) (in context of *Chevron* deference, stating that a court may not declare a statute ambiguous and then defer to an agency interpretation "unless, *after employing traditional tools of statutory construction*," the court "is unable to discern Congress's meaning") (emphasis added and cleaned up).

would render the phrase[ ]. . . 'e.g.' inoperative or meaningless.") (citing Cal. Civ. Code § 1641), and as JG does not dispute EJ's reading of Paragraph 1(c) in isolation, I agree with EJ that Paragraph 1(c) on its face does not limit EJ's use of JUST "in text" to things of the same general kind or class as the specifically mentioned examples, much less those examples themselves.[3]

Yet EJ makes a critical concession when it contends the words "in text" in Paragraph 1(c) limit its permissible use of JUST to "only in prose or in a sentence." EJ states that it is "not allowed to use the standalone JUST as a logo, social media handle, online platform title, or placed on a billboard—situations where its use is more attention-grabbing." JG pounces on this concession, arguing correctly that EJ "therefore implicitly concede[s] that [some] uses of JUST that [JG] identified in its motion to enforce—i.e., all of those not appearing in prose—violated the Term Sheet." EJ's reply is silent in response to this devastating point.

Thus, JG's motion to enforce the Term Sheet identifies 18 specific alleged violations of the Term Sheet by EJ directly.[4] Of these alleged direct violations, it appears to me that nine violate the Term Sheet *as interpreted by EJ*, because they involve use of JUST in various stand-alone, attention-grabbing settings. The

---

[3] Of course, as JG stresses, and my colleagues rightly observe, Paragraph 1(c) cannot be read in isolation—more on this below.

[4] JG also identifies three other asserted violations in the form of third-party media articles that referred to "JUST" with "the express or implicit permission" of EJ.

attached Addendum contains screenshots with alleged violations identified through red boxes, nine of which involve the stand-alone uses of JUST.

The remaining alleged violations identified by JG involve EJ's use of JUST in prose, such as "At JUST, we believe that a just food system begins with breakfast." Some, but not all, of the identified uses by EJ in prose include the JUST Frame Logo. Under my reading of Paragraph 1(c)—which follows *EDebitPay* and assumes that the California variant of *ejusdem generis* is inapplicable—such use of JUST is permissible, whether accompanied by the JUST Frame Logo or not.[5]

My colleagues, however, read Paragraph 1(c) as "only authoriz[ing] EJ to use JUST 'in text' in certain specified instances," *ante* at 2, which are "in the Frame Logo" and "in text in conjunction with a generic product name (e.g., Just Egg)." *Id*. (They also conclude that "other sections of the Term Sheet *underscore* that other in text uses are not authorized," *id*. (emphasis added), but more on that below.) In effect, my colleagues apply the California variant of *ejusdem generis* to Paragraph 1(c), despite *EDebitPay*.

But even if that *ejusdem generis* variant applies here, I respectfully contend that my colleagues misread Paragraph 1(c) at two levels. To begin with, under *ejusdem generis* the relevant language is treated as applying to "persons or things *of*

---

[5] And for the same reasons, EJ permissibly assented to third parties referring to it as "JUST" in media articles. *See above* note 4.

*the same general kind or class* specifically mentioned," Scalia & Garner, *above*, at 199 (emphasis added)—not just the *examples* themselves. But even if Paragraph 1(c) is given so cramped a reading, my colleagues impermissibly read one of the examples out of the Term Sheet.

Paragraph 1(c)'s first example of a permissible use of JUST "in text" is "in advertising or marketing copy *so long as* the JUST Frame Logo is present." (emphasis added). "So long as" means "provided that." *Webster's New Collegiate Dictionary* 1098 (1980). EJ may use JUST "in text" *provided that* the JUST Frame Logo is also present. My colleagues disagree, contending that the first example only allows EJ to use the JUST Frame Logo *itself* in text. That reading cannot be squared with the words "so long as." In addition, it renders the first example superfluous, because subparagraph (a) *already* authorizes the use of the JUST Frame Logo without limitation.

The parties also dispute whether the rest of Paragraph 1(c) consists of one or three other examples. JG argues that it consists only of one, meaning that along with the use of JUST in text so long as the JUST Frame Logo is present (example one), JUST can *also* be used in text in advertising or marketing copy, in descriptions, and in governmental or other corporate filings, but in all these instances, only "in connection with generic names for [EJ's] products."

EJ responds that the limitation "in connection with generic names for [its] products" applies only to "advertising or marketing copy," and not to "descriptions" and "governmental or other corporate filings." For that reading to be correct, I would expect at least two things to be different. I would expect a comma to appear after the word "present" and I would expect that the word "or" would not appear at that same point. I would also expect an "or" to appear before the ostensible last list item ("in governmental or other corporate filings"). So I think JG has the better argument on this point—the second example is limited to EJ's use of JUST coupled with a generic product in (i) advertising or marketing copy, (ii) in descriptions, or (iii) in governmental or other corporate filings.[6] That means, as JG argues, that Paragraph 1(c) has two, not four, examples.

* * *

Thus, the meaning of Paragraph 1(c)—before considering its interplay with the rest of the Term Sheet—turns on the threshold question of whether we apply the California variant of the *ejusdem generis* canon. I do not think the canon applies

---

[6] EJ argues that this reading bars their fair use of JUST in descriptions or other corporate filings. JG responds that the district court's order "does not, and was not meant to, address—much less prohibit—Defendants' right to fairly use JUST in descriptions or governmental or other public filings." In view of this concession by JG, whatever else the district court's order does, it does not prohibit EJ's fair use of JUST in descriptions or governmental or other public filings, and JG would be judicially estopped from contending otherwise.

under our decision in *EDebitPay*, and therefore subparagraph (c)'s two examples do not limit EJ's use of JUST in text. The only limitation on such use—based on EJ's concession—is to occurrences in "prose or in a sentence."[7]

Moreover, even if the California variant of the *ejusdem generis* canon did apply, my colleagues do not apply it correctly for two reasons. First, they read one of the two examples—the use of JUST in text *so long as* the JUST Frame Logo is present—completely out of the Term Sheet. Second, they impermissibly limit the other to that example alone rather than to things of the same general kind or class.

**b.** As JG argues at length—and my colleagues rightly observe—Paragraph 1 must be read in context with the rest of the Term Sheet. There is thus another question: whether the Term Sheet's other provisions compel my colleagues' narrow reading of Paragraph 1(c). *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

My colleagues point to Paragraph 2 as "underscor[ing]" that the Term Sheet does not permit "other in text uses" of JUST—that is, beyond "(1) in the Frame Logo, (2) as part of the names/phrases 'Eat Just' and 'Make it Just,' and (3) in text

---

[7] JG argues, and the district court agreed as much, that this reading leads to an "absurd result." But one contracting party's absurd result is another's buyer's remorse. It's not our job to bail JG out from the consequences of a negotiated contract that it freely agreed to with the advice of counsel.

in conjunction with a generic product name (e.g., Just Egg)." *Ante* at 2. Specifically,

my colleagues point to the italicized passage in Paragraph 2 below:

> 2. Defendants may use and register the JUST Frame Logo and the trademarks JUST EGG, JUST SCRAMBLE, JUST COOKIES, JUST COOKIE DOUGH, and JUST MAYO—all in the format of the JUST Frame Logo—or MAKE IT JUST as described below in Paragraph 3 only for their existing products, which are plant-based mayo, cookie dough, egg substitute or egg alternative products, salad dressings or spreads, or with future vegan products or cultured meat products (wherein fish and poultry are included in "meat products"). *For the sake of clarity, Just, Inc. may refer in text to its brand as JUST, so long as JUST is used in connection with Defendants' generic product name (e.g., "Just Mayo," "Just Egg," "Just Cookie Dough," or "Just products").* Defendants may not use the JUST Frame Logo or the Permitted Marks for any beverage products of any kind, except for plant-based milk. Collectively the products permitted in this Paragraph are referred to as Defendants' "Permitted Products." The marks permitted herein are referred to as the "Permitted Marks."

*See ante* at 2 (quoting the italicized language from the Term Sheet) (emphasis

added).

EJ cogently argues that the first sentence of Paragraph 2 allows EJ to use JUST

with generic products in the Frame Logo, while the second sentence simply clarifies

that EJ may also use JUST in text with the same products. In effect, Paragraph 2's

clarifying second sentence partially restates the second example of Paragraph 1(c),

i.e., it authorizes the use of JUST "in text" "in connection with generic names for

their products in advertising or marketing copy"—and need not be read as

irreconcilable with Paragraph 1(c)'s general authorization of use of JUST "in text,"

or Paragraph 1(c)'s first example of use in text "so long as the JUST Frame Logo is present."

Even if Paragraph 2 is interpreted to conflict with Paragraph 1(c), California law provides a default rule that resolves the conflict. Under that rule, "conflicting provisions can be harmonized by applying the well-established rule that where two clauses of a contract cannot be reconciled, the first shall be received and the latter rejected." *Valdez v. Super. Ct. of San Bernardino Cnty.*, No. E070656, 2019 WL 1236932, at *5 (Cal. App. 4th Dist. Mar. 18, 2019), *as modified* (Apr. 4, 2019) (citing *In re Estate of Cox*, 8 Cal. App. 3d 168, 199 (4th Dist. 1970)). Paragraph 1(c) therefore prevails over Paragraph 2 and later provisions in the Term Sheet, insofar as harmonization is impossible.

My colleagues also point to Paragraphs 3, 5, 9, 12, and 15 as examples of "numerous other restrictions regarding EJ's use of JUST" in the Term Sheet. *Ante* at 2. In my view, all those provisions—save one—are, like Paragraph 2, reconcilable with my reading of Paragraph 1(c). On the other hand, one provision—Paragraph 12—bars EJ from "us[ing] . . . any new trademarks with the word JUST in them other than the JUST Frame Logo and the Permitted Marks." I read this blanket prohibition as irreconcilable with Paragraph 1(c), and under California's default tiebreaker rule, Paragraph 1(c) necessarily prevails insofar as Paragraph 12 bars EJ's

use of JUST "in text," as limited by EJ's concession that such permitted use does not include stand-alone, "attention-grabbing" uses.

\* \* \*

In sum, I read the Term Sheet as permitting EJ's use of JUST in the nine identified instances in which such use was not stand-alone.[8] But as to the other nine identified instances in which the identified use was stand-alone, I would affirm the district court based on EJ's concession.

## 2.

The district court also found that EJ violated the Term Sheet by changing its company name to Eat JUST, Inc., when Paragraph 5 required the company to change its name to "Eat Just, Inc." In its order finding EJ in violation of the Term Sheet, the district court also put EJ "on notice" that "emphasizing 'just' in 'Make it Just' is not permitted by the Term Sheet."

---

[8] It follows that I also disagree with the district court's conclusion that EJ's reposting on social media of articles and third-party statements using JUST violated the Term Sheet, as all these repostings involved the use of JUST in prose. And because an underlying order's error is a defense to civil contempt, *see In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 726 n.11 (9th Cir. 1989) ("The invalidity of the underlying order is always a defense to a civil contempt charge.") (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 295 (1947)), then it also follows that we should reverse the district court's finding that EJ was in civil contempt for violating its order enforcing the Term Sheet by such reposting.

My colleagues affirm these conclusions, reasoning that "[c]apitalization of the term JUST varies throughout the Term Sheet, and the district court appropriately found that the 'absence of capitalization' in particular provisions at issue was 'intentional.' " *Ante* at 3. They add that the district court "also correctly recognized that allowing EJ to capitalize JUST in its corporate name . . . would be a 'backdoor' to violation of the Term Sheet." *Id.*

EJ argues, and I agree, that the Term Sheet's inconsistent capitalization cuts against this reading. Paragraphs 1(b) and 3 allow EJ to use MAKE IT JUST, but Paragraph 15 provides that EJ must "change all social media handles and online platforms to the new company name or to the name 'Make it Just' . . . ." Paragraph 2 provides that "EJ may refer in text to its brand as JUST"—*in all caps*—but then provides examples in which JUST is not in all caps: " 'Just Mayo,' 'Just Egg,' 'Just Cookie Dough,' or 'Just products.' " In view of these inconsistencies, as well as my reading of Paragraph 1 as allowing EJ to use JUST in text in all caps subject only to the restriction admitted by EJ, I do not interpret Paragraph 5 to bar EJ from using all-caps JUST in its company name or in "Make it Just."

## Conclusion

For the reasons provided above, I join my colleagues in affirming the district court's conclusion that EJ's use of JUST in the nine stand-alone, attention-grabbing settings identified in the attached addendum violated the Term Sheet. As to the rest

of EJ's alleged violations of the Term Sheet and the district court's finding of EJ in civil contempt for violating its order enforcing the Term Sheet, I respectfully dissent and would reverse.

\* \* \*

**Addendum**

**(Stand-Alone Uses of JUST Alleged as Term Sheet Violations)**

**Instagram:**

This screenshot of EJ's Instagram pages uses JUST once as a stand-alone logo:



**Twitter:**

This screenshot of EJ's Twitter page twice uses JUST as a stand-alone Twitter display name:



This retweet by EJ uses JUST once in a stand-alone Twitter display name and once in prose:



This tweet by EJ uses JUST once in a stand-alone Twitter display name and twice in prose:



This is a retweet of the tweet above by EJ's Head of Global Communications:



**Facebook:**

This screenshot of EJ's Facebook page uses JUST as a stand-alone username and also uses the stand-alone Twitter display name of JUST:



**LinkedIn:**

This screenshot of the LinkedIn page of EJ's CEO Josh Tetrick uses JUST once in prose (Mr. Tetrick's title) and once as a stand-alone logo next to the JUST Frame Logo:

